**[ORAL ARGUMENT NOT YET SCHEDULED]**
**No. 23-7080**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

ESTATE OF JEREMY ISADORE LEVIN, ET AL.,

Plaintiffs-Appellees,

JAMES OWENS, ET. AL.,

Plaintiffs-Appellants,

v.

WELLS FARGO BANK, N.A.,

Defendant-Appellee,

_____

UNITED STATES OF AMERICA,

Intervenor-Appellee.

On Appeal from the United States District Court for the District of Columbia,
No. 1:21-cv-00420-JEB (Judge James E. Boasberg)
_____

**CRYSTAL HOLDINGS LIMITED'S MOTION TO INTERVENE**

Christopher D. Man, Bar No. 453553DC
Cari N. Stinebower, Bar No. 457147DC
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, D.C. 20036
Cman@winston.com
(202) 282-5000 (ph)
(202) 282-5100 (fax)

*Counsel for Intervenor Crystal Holdings Limited*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

BACKGROUND...................................................................................2

    A.    Background On The Transaction.........................................2

    B.    Procedural History.............................................................4

    C.    Significance Of The Escrow Arrangement To Crystal............7

LEGAL STANDARD ...................................................................10

ARGUMENT.....................................................................................10

   I.    CRYSTAL IS ENTITLED TO INTERVENTION AS OF RIGHT.........................................................................................10

    A.    Crystal's Motion Is Timely ...............................................11

    B.    Crystal Has An Interest In The Subject Of The Action..........14

    C.    Absent Intervention, Crystal's Rights May Be Impaired As A Practical Matter.......................................................14

    D.    Crystal's Interest Is Not Adequately Represented................17

   II.   ALTERNATIVELY, CRYSTAL IS ENTITLED TO PERMISIVE INTERVENTION .................................................18

CONCLUSION...........................................................................18

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*99 Commercial Street, Inc. v. Goldberg*,
  811 F. Supp. 900 (S.D.N.Y. 1993)............................................................8

*Alarmex Holdings, LLC v. Gowan (In re Dreier LLP)*,
  527 B.R. 126 (S.D.N.Y. 2014) ................................................................8

*Bowser v. D.C. Dep't of Corr.*,
  2022 WL 16545368 (D.C. Cir. Oct. 31, 2022) (per curiam).........................16

*In re Brewer*,
  863 F.3d 861 (2017) ............................................................................11

*Cameron v. EMW Women's Surgical Ctr.*,
  142 S. Ct. 1002 (2022).................................................................... 10, 11

*Fund for Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir.2003) ...............................................................15

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of*
  *Am. AFL-CIO, Local 283 v. Scofield*,
  382 U.S. 205 (1965) ............................................................................15

*In re Jazzland, Inc.*,
  322 B.R. 610 (E.D. La. 2005) .................................................................8

*Khaliq v. Republic of Sudan*,
  No. 10-cv-356 (D.D.C. Mar. 28, 2014)......................................................2

*Levin v. Islamic Republic of Iran*,
  523 F. Supp. 3d 14 (D.D.C. 2021).....................................................*passim*

*Levin v. Islamic Republic of Iran*,
  No. 05-cv-2494, 2008 WL 11493474 (D.D.C. Jan. 14, 2008).........................2

*Estate of Levin v. Wells Fargo Bank, N.A.*,
  No. 21-420, 2023 WL 3750577 (D.D.C. June 1, 2023)............................ 7, 12

*Estate of Levin v. Wells Fargo Bank NA*,
  45 F.4th 416 (D.C. Cir. 2022) .............................................................*passim*

*In re Liddle*,
  608 B.R. 356 (S.D.N.Y. 2019) ............................................................ 1, 3, 8

*Mwila v. Islamic Republic of Iran*,
  No. 08-cv-1377 (D.D.C. Mar. 28, 2014) ......................................................2

*NAACP v. New York*,
  413 U.S. 345 (1973) ....................................................................... 11

*Nuesse v. Camp*,
  385 F.2d 694 (D.C. Cir. 1967) ............................................................. 15

*In re O.P.M. Leasing*,
  46 B.R. 661 (S.D.N.Y. 1985) ..............................................................8

*Oneida Indian Nation of Wis. v. New York*,
  732 F.2d 261 (2d Cir. 1984) .............................................................. 14

*Owens v. Republic of Sudan*,
  No. 01-cv-2244 (D.D.C. Mar. 28, 2014) ......................................................2

*Parsi v. Daioleslam*,
  778 F.3d 116 (D.C. Cir. 2015) ............................................................ 17

*In re RISCmanagement, Inc.*,
  304 B.R. 566 (D. Mass. 2004) .............................................................8

*Roane v. Leonhardt*,
  741 F.3d 147 (D.C. Cir. 2004) ......................................................... 11, 15

*In re TTS, Inc.*,
  158 B.R. 583 (D. Del. 1993) ..............................................................8

*United Airlines, Inc. v. McDonald*,
  432 U.S. 385 (1977) ................................................................... 11, 12

*United States v. $2,340,000 Associated With Petroleum Tanker Nautic*,
  No. 1:20-cv-01139 (D.D.C. May 1, 2020) .................................................*passim*

*United States v. All Assets Held At Credit Suisse (Guernsey) Ltd.*,
45 F.4th 426 (D.C. Cir. 2022) ..................................................................... 10

*United States v. All Funds on Deposit*,
783 F.3d 607 (7th Cir. 2015) ........................................................................ 5

**Statutes**

18 U.S.C. § 981(a)(1)(A) .................................................................................. 4

18 U.S.C. § 981(a)(1)(C) .................................................................................. 4

18 U.S.C. § 981 (a)(1)(G)(i) ............................................................................. 4

18 U.S.C. § 983(d) ....................................................................................... 9, 17

18 U.S.C. § 1344 .............................................................................................. 4

18 U.S.C. § 1956 .............................................................................................. 4

50 U.S.C. §§ 701 et seq. ................................................................................... 4

**Other Authorities**

28 Am. Jur. 2d Escrow §10 (1964) ................................................................... 8

Fed. R. Civ. P. 24 ...................................................................................... 10, 18

## INTRODUCTION

Crystal Holdings Limited ("Crystal") has a far greater interest in this case than any of the parties, who are essentially fighting over money that is rightfully owned by Crystal.  Crystal innocently sold its ship *Nautic* in good faith, but the U.S. government claims that the buyer, Taif Mining Services ("Taif")—unbeknownst to Crystal and despite robust beneficial ownership due diligence—was a front company for Iran.  Crystal and Taif jointly retained Holman Fenwick Willan LLP ("HFW") to act as their escrow agent in the United Kingdom.  After HFW confirmed that Crystal had delivered the *Nautic* and Taif had paid the full purchase price to HFW, the sale was complete and escrow closed.  Title to the funds held in escrow by HFW vested in Crystal while the purchase money was still in the possession of HFW.  *See, e.g.*, *In re Liddle*, 608 B.R. 356, 363-64 (S.D.N.Y. 2019).  HFW, acting as Crystal's agent, then attempted to electronically transfer the funds from HFW's bank in England to Crystal's bank account in Switzerland, but the funds were blocked by the U.S. government as they passed through a U.S. intermediary bank and before they reached Crystal's bank account.

The existing parties have wrongly assumed that title to these funds still belonged to Iran via Taif at the time they were transferred and blocked.  Based on that flawed assumption, the U.S. government claims the funds are forfeitable assets

1

of Iran and the *Owens* and *Levin* plaintiffs[1] claim that they can attach the funds as Iranian assets to satisfy the sizeable unpaid judgments they have secured against Iran.

None of the existing parties has any right to the funds, however, as they belonged to Crystal when they were sent by Crystal's escrow agent and blocked by the U.S. government. Crystal should be allowed to intervene as of right, or at least permissively, to defend its interest in the funds.

## BACKGROUND

### A.      Background On The Transaction

Crystal and Taif jointly retained HFW to act as their escrow agent on June 26, 2019 with respect to the sale of *Nautic*. *Estate of Levin*, 45 F.4th at 418 ("The Holman Fenwick law firm served as the parties' escrow agent."). This escrow arrangement was designed to facilitate a June 10, 2019 Memorandum of Agreement between Crystal and Taif concerning the sale of the vessel.

---

[1] The *Owens* plaintiffs secured judgments of nearly $1 billion. *Estate of Levin v. Wells Fargo Bank NA*, 45 F.4th 416, 419 (D.C. Cir. 2022) (citing Order, *Owens v. Republic of Sudan*, No. 01-cv-2244 (D.D.C. Mar. 28, 2014), R. Doc. 301; Order, *Mwila v. Islamic Republic of Iran*, No. 08-cv-1377 (D.D.C. Mar. 28, 2014), R. Doc. 88; Order, *Khaliq v. Republic of Sudan*, No. 10-cv-356 (D.D.C. Mar. 28, 2014), R. Doc. 40). The *Levin* plaintiffs secured a judgment of nearly $30 million. *Estate of Levin*, 45 F. 4th at 419 (citing *Levin v. Islamic Republic of Iran*, No. 05-cv-2494, 2008 WL 11493474 (D.D.C. Jan. 14, 2008)).

Around September 10, 2019, Taif transferred its initial deposit of $2.34 million to HFW, which represented 20% of the purchase price. Pursuant to the escrow agreement, HFW successfully transferred the initial deposit for the purchase to Crystal's bank account on September 19, 2019. *See Levin v. Islamic Republic of Iran*, 523 F. Supp. 3d 14, 16 (D.D.C. 2021). Taif then deposited the remaining purchase price funds of $9.98 million with HFW, and Crystal transferred the *Nautic* to Taif on October 22, 2019.

Pursuant to Paragraph 2(c) of the July 26, 2019 agreement with HFW, which required HFW to transfer the remaining funds to Crystal's bank account "on completion of the sale," HFW then sought to deliver the funds that it held on Crystal's behalf to Crystal on October 23 and 24, 2019. Importantly, title to those funds transferred to Crystal once it had completed its obligations under the escrow agreement by transferring the vessel. *See, e.g.*, *In re Liddle*, 608 B.R. at 363-64 (explaining that a seller has an equitable interest in purchase money placed in escrow while completion of the escrow terms is pending but "title will vest at once" upon the completion of the seller's escrow obligations).

Consequently, HFW was not sending the funds to Crystal to complete the sale, as the sale already was complete. Upon closing of the escrow, HFW attempted to transfer the $9.98 million electronically from HFW's bank account at Lloyds Bank PLC in London to Crystal's bank account at Credit Suisse in Switzerland, but the

funds had to pass through an intermediary bank, Wells Fargo in New York. This accords with normal agency principles where an agent collects money on behalf of its principal and then seeks to deliver those funds to the principal. Nevertheless, HFW's wire transfer was blocked by the U.S. Treasury's Office of Foreign Assets Control ("OFAC"), based on the mistaken belief that the funds belonged to Taif or that Taif had some lingering interest. Those funds are the subject of this appeal.

### B.     Procedural History

On May 1, 2020, the government filed a civil *in rem* forfeiture complaint that claimed the funds belonged to the Islamic Revolutionary Guard Corps, a designated Foreign Terrorist Organization ("FTO"). *United States v. $2,340,000 Associated With Petroleum Tanker Nautic*, No. 1:20-cv-01139, D.E. 1 ¶¶ 1-2, 58-59 (D.D.C. May 1, 2020). As assets of a designated FTO, the government sought forfeiture under 18 U.S.C. § 981 (a)(1)(G)(i). The government also sought forfeiture under 18 U.S.C. § 981(a)(1)(C) as proceeds from an IEEPA violation, 50 U.S.C. §§ 701 et seq., and bank fraud, 18 U.S.C. § 1344, and forfeiture under 18 U.S.C. § 981(a)(1)(A) as money laundering proceeds, 18 U.S.C. § 1956. *Id.*

The district court ordered the property's arrest pursuant to Federal Rule of Civil Procedure, Supplemental Rule G, which governs *in rem* forfeiture actions. *Levin*, 523 F. Supp. 3d at 17. Although IEEPA authorizes blocking funds, "warrants

of arrest *in rem*" are authorized by Rule G.  *See United States v. All Funds on Deposit*, 783 F.3d 607, 625 (7th Cir. 2015).

Following reports of the forfeiture action in the press, two classes of plaintiffs—the *Owens* plaintiffs and *Levin* plaintiffs—which had both secured sizeable unpaid judgments against Iran, sought writs of attachment on the blocked funds.  The *Owens* plaintiffs filed for their writ of attachment in May 2020 and the *Levin* plaintiffs filed for writs if attachment in multiple proceedings in August 2020.  The government intervened in each of those proceedings, and the proceedings were transferred and consolidated before the district court below.  *Levin*, 523 F. Supp. 3d at 18.

Given the litigation over the writs of attachment, the forfeiture proceeding has not advanced.  The government filed numerous notices of consent to extending the deadline for interested parties to submit claims, and Crystal ultimately submitted its timely claim and answer to the complaint on December 7, 2022.  *$2,340,000*, No. 1:20-cv-01139, D.E. 17 & 18.  The district court has kept a stay in place while the *Owens* and *Levin* attachment issues are litigated.  *See $2,340,000*, No. 1:20-cv-01139, Minute Order (D.D.C. June 16, 2023).

The litigation concerning the attachments has been extensive.  The district court quashed the writs of attachment, but this Court reversed that decision.  *See Levin*, 523 F. Supp. 3d at 24, *rev'd*, *Estate of Levin*, 45 F.4th at 424.  The district

court concluded that the *Owens* and *Levin* plaintiffs could not attach the funds because Iran did not have a property interest in them. *Levin*, 523 F. Supp. 3d at 24. The district court believed that it was appropriate to apply Article 4A of the Uniform Commercial Code ("UCC"), and that this dictated that only Lloyds Bank, as the immediate transferor of the funds, had a property interest in the funds. *Id.*

This Court reversed, noting that the government's theory that the *Owens* and *Levin* plaintiffs cannot attach the property because Iran had no property interest in the funds is "inherently at odds" with the government's own theory that it could block and obtain forfeiture of because the funds belonged to Iran. *Estate of Levin*, 45 F.4th at 423. Rather than apply the UCC, this Court applied tracing principles. It noted that neither Wells Fargo nor Lloyds Bank faced a financial loss; the money was just passing through them. Similarly, HFW was merely "an escrow agent; it never owned the money." *Id.* at 422-23. As the *Owens* and *Levin* plaintiffs, as well as the government, claimed that Taif owned the funds, the Court held that "terrorist victims may attach OFAC blocked electronic funds transfers if those funds can be traced to a terrorist owner." *Id.* at 423. Judge Pillard concurred, emphasizing that tracing analysis may need to be supplemented with "common-law ownership and agency principles" to protect innocent owners and third parties. *Id.* at 424. In remanding, this Court noted that this was the only ground for challenging the writs of attachment that it was deciding. *Id.* at 423-24.

On remand, the government again moved to quash the writs of attachment, but on different grounds. Agreeing with the government, the district court held that the funds are not subject to attachment under the Terrorism Risk Insurance Act because they are no longer blocked assets because OFAC granted the government a license to seek forfeiture of the funds. *Estate of Levin v. Wells Fargo Bank, N.A.*, No. 21-420, 2023 WL 3750577, at *5-*7 (D.D.C. June 1, 2023). The Court also concluded that the prior exclusive jurisdiction doctrine applied, and that the *Owens* and *Levin* plaintiffs would have to seek relief in the civil forfeiture action that had been filed first. *Id.* at *9. Finally, the Court concluded that the *Owens* and *Levin* plaintiffs could not attach the funds under the Foreign Sovereign Immunity Act either. *Id.* at *11.

## C.    Significance Of The Escrow Arrangement To Crystal

The existing parties—the government and the *Owens* and *Levin* plaintiffs—view the transaction as Iran (acting through Taif) sending funds to Crystal that were blocked before the funds reached Crystal's account and, thus, before Crystal acquired title to the funds. They maintain that the funds belonged to Iran at the time the funds were blocked, and that Iranian ownership is the basis for the government's claim of forfeiture and the *Owens* and *Levin* plaintiffs' claims for attachment. But both overlook the significance of the escrow agreement, in which all parties recognize that Taif and Crystal jointly retained HFW as their escrow agent.

7

Escrow law is summarized in *In re Liddle*:

"[L]egal title to property placed in escrow remains with the grantor until the occurrence of the condition specified in the escrow agreement." *Alarmex Holdings, LLC v. Gowan (In re Dreier LLP)*, 527 B.R. 126, 133 (S.D.N.Y. 2014) (citing *In re O.P.M. Leasing*, 46 B.R. 661, 667 (S.D.N.Y. 1985). The deposit of funds in escrow creates "in the grantee such an equitable interest in the property that upon full performance of the conditions according to the escrow agreement, *title will vest at once in him.*" *Id.* (citations omitted). Thus, "[i]n a very real sense, ownership [in an escrow] is held in stasis, the instrument available neither to grantor nor grantee, awaiting disposition by the agent in accordance with the terms of the agreement." *99 Commercial Street, Inc. v. Goldberg*, 811 F. Supp. 900, 906 (S.D.N.Y. 1993) (Sotomayor, J.).

608 B.R. at 363-64 (emphasis added). This "title will vest at once" language is widely repeated in the case law. *See, e.g.*, *In re Jazzland, Inc.*, 322 B.R. 610, 617-18 (E.D. La. 2005); *In re RISCmanagement, Inc.*, 304 B.R. 566, 585 n.9 (D. Mass. 2004) (noting this is the law in "New York, as in most other states"); *In re TTS, Inc.*, 158 B.R. 583, 586 (D. Del. 1993); *O.P.M. Leasing*, 46 B.R. at 667 (quoting 28 Am. Jur. 2d Escrow § 10 (1964)). Under ordinary agency principles, once escrow conditions are satisfied, title to the escrowed purchase funds vests in the seller and those funds are transferred by the escrow agent to the seller. *See, e.g.*, *O.P.M. Leasing*, 46 B.R. at 470; *see also Liddle*, 608 B.R. at 362 (addressing escrow under standard agency principles).

Crystal maintains that is what happened here. The escrow arrangement was designed to assure both parties to it that the other side will honor its end of the bargain. Taif deposited the purchase funds with HFW, assuring that Crystal would

8

receive the funds if it transferred the *Nautic* to Taif.  Once Crystal did that, the sale was complete.  Title to the *Nautic* transferred to Taif and title to the purchase funds vested at once in Crystal, while the funds were still in HFW's hands.  Both parties had completed their obligations to one another under the escrow agreement.

At that point, Taif did not own the funds or transfer them to Crystal.  Nor did Taif have any lingering indirect interest in the funds.  Rather, HFW—acting as the agent to Crystal—transferred the funds belonging to Crystal (HFW's principal in this agent-principal relationship) that were in HFW's possession to Crystal's bank account.  Consequently, the funds already belonged to Crystal when they were in its agent's hands and the agent was sending Crystal's bank account the funds.  *See also Estate of Levin*, 45 F.4th at 426 (Pillard, J., concurring) (noting that it may be necessary to apply "agency principles" to "reduce legal uncertainty for innocent owners and third parties").  This is the basis for Crystal to assert its innocent owner defense in the civil forfeiture proceeding.  18 U.S.C. § 983(d).

The existing parties have addressed the legal issues associated with the *Owens* and *Levin* plaintiffs' ability to attach the property, *assuming* that those parties are correct that the funds belonged to Iran (Taif) at the time they were blocked.  Crystal has no objection to this Court affirming the district court's rejection of the *Owens* and *Levin* plaintiffs' attachment claims, while assuming that the funds belonged to Iran (Taif) at the time they were blocked, but Crystal does want to highlight that the

question of who held title to the seized funds is very much a disputed fact by Crystal. If the Court were to reverse the district court and allow the attachments to go forward, this crucial issue must be decided by the district court on remand. If the Court affirms, the district court will have to decide the issue in the civil forfeiture proceeding, where Crystal already has made this claim.

## LEGAL STANDARD

A motion to intervene on appeal is assessed according to "the 'policies underlying intervention' in the district courts." *Cameron v. EMW Women's Surgical Ctr.*, 142 S. Ct. 1002, 1010 (2022). This Court explains that "[b]cause the Federal Rules of Appellate Procedure are silent on the subject, we apply the intervention standards of Civil Rule 24." *United States v. All Assets Held At Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 432 (D.C. Cir. 2022). Crystal's intervention here is warranted here under both Rule 24(a) and Rule 24(b).

## ARGUMENT

## I.    CRYSTAL IS ENTITLED TO INTERVENTION AS OF RIGHT

Crystal is entitled to intervention as of right under Rule 24(a)(2). This Court explains:

> As to the merits of intervention, the prospective intervenors must satisfy the four requirements of Rule 24(a)(2): (1) the motion for intervention must be timely; (2) intervenors must have an interest in the subject of the action; (3) their interest must be impaired or impeded as a practical matter absent intervention; and (4) the would-be intervenor's interest must not be adequately represented by any other party.

*In re Brewer*, 863 F.3d 861, 872 (2017).

### A.    Crystal's Motion Is Timely

"Timeliness is to be determined from all the circumstances" and is not controlled by "the point to which the suit has progressed." *NAACP v. New York*, 413 U.S. 345, 365–66 (1973). "That the intervenors '*could* have intervened earlier,' . . . does not mean they '*should* have intervened earlier,' making their motion untimely." *In re Brewer*, 863 F.3d at 872 (quoting *Roane v. Leonhardt*, 741 F.3d 147, 152 (D.C. Cir. 2014)). The Supreme Court has found that intervention on appeal is warranted even after years of litigation. *Cameron*, 142 S. Ct. at 1012 (explaining *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977), rejected claims that intervention was untimely after five years of litigation). In many instances, the Supreme Court and this Court have permitted intervention on appeal, after a matter has been fully litigated in the district court. *See, e.g.*, *Cameron*, 142 S. Ct. at 1012; *In re Brewer*, 863 F.3d at 872; *Roane*, 741 F.3d at 152.

This Court does "not require timeliness for its own sake. Instead, the requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Roane*, 741 F.3d at 152 (citations omitted). None of those factors are present here.

This is an unusual case, with the consolidation of numerous actions rendering "this case a Gordian knot," and Crystal has long been a part of the related

proceedings. *Levin*, 523 F. Supp. 3d at 19. The attachment actions by the *Owens* and *Levin* plaintiffs were brought in response to the civil forfeiture proceeding filed by the government, in an effort to circumvent that proceeding. No one disputes that Crystal timely filed its claim and answer joining the civil forfeiture proceeding. *See $2,340,000*, No. 1:20-cv-01139, D.E. 17 & 18 (D.D.C. Dec. 7, 2022). The civil forfeiture action has been "essentially on ice," while the district court has dealt with writ of attachment issues. *Levin*, 523 F. Supp. 3d at 18. Consequently, it is these tangential attachment proceedings filed by the *Owens* and *Levin* plaintiffs that is disrupting the first-filed civil forfeiture proceeding, where Crystal already is a party. The *Owens* and *Levin* "[p]laintiffs must seek relief there," in the civil forfeiture proceeding. *Levin*, 2023 WL 3750577, at *9.

As in *McDonald*, where the Supreme Court found that a delay in intervening was not prejudicial because the other parties had been "put on notice" of the intervenor's claim, the same is true here. 432 U.S. at 395. Indeed, Crystal already is litigating the very issue that is raises here in related litigation that was filed first.

Nor will Crystal's presence in this litigation complicate this appeal. Crystal does not intervene to raise a new issue on appeal that the Court must necessarily decide; rather, Crystal seeks to clarify the record to prevent the Court from prejudging open issues that have not yet been addressed by the district court. Crystal's concern is that the existing parties all claim that the funds that were sent to

the blocked account belong to Iran, as that is the basis for each of their claims to the funds. Crystal wants this Court to be careful not to prejudge this issue because Crystal maintains that those funds belonged to it at the time they were sent by HFW and blocked by OFAC, a fact that would make Crystal the only entity with a legitimate claim to those funds.

The need for Crystal to intervene to provide that clarity to this Court did not arise until the *Owens* and *Levin* plaintiffs appealed the district court's order to this Court.[2] The district court's order accepted the government's argument that prior exclusive jurisdiction over the funds exists in the civil forfeiture proceeding, which leaves the *Owens* and *Levin* plaintiffs able to pursue their claims to the funds in the forfeiture action. *See $2,340,000*, No. 1:20-cv-01139, D.E. 4 (D.D.C. June 30, 2020) (claim filed by *Owens* plaintiffs in the civil forfeiture proceeding). Crystal did not need to intervene before the district court to highlight its claim to the funds, as the district court already is aware that Crystal filed its claim to the funds in the forfeiture action before it. Now that the *Owens* and *Levin* plaintiffs have appealed to this Court, Crystal believes it is necessary to intervene to highlight its position to this Court. No other party has an interest in highlighting that there is a disputed fact as

---

[2] In the prior appeal, Crystal appeared as *amicus* before this Court and advanced the same position that it obtained title upon the closing of escrow, before HFW sent the funds that were then blocked. *Estate of Levin v. Wells Fargo Bank, N.A.*, Nos. 21-7036, 21-7041 (lead), 21-7044, 21-7052, 21-7053, Crystal's Amicus Br. at 28-29 (D.C. Cir. Nov. 22, 2021).

to who now owns the blocked funds and it is not reasonable to expect this Court to wade through the record of a related proceeding to discover that dispute for itself.

### B.    Crystal Has An Interest In The Subject Of The Action

There can be no doubt that Crystal has an interest in the subject of the action, as it maintains that the very funds that the *Owens* and *Levin* plaintiffs seek to attach for themselves as Iranian property actually belong to Crystal.    In litigation concerning ownership of property, competing claims of ownership by an intervenor are among the strongest grounds for allowing intervention.  *See, e.g.*, *Oneida Indian Nation of Wis. v. New York*, 732 F.2d 261, 265 (2d Cir. 1984) ("Because we believe that there is a substantial likelihood that the claims and interests of the proposed intervenors concerning the disputed lands may be adversely affected at least by principles of *stare decisis*, arising out of the final judgment to be entered in this case, we conclude that they may intervene as a matter of right.").

### C.    Absent Intervention, Crystal's Rights May Be Impaired As A Practical Matter

Absent intervention, the Court may be misled by the narrative presented by all the existing parties that the funds at issue belong to Iran, which could as a practical matter impair Crystal's ability to argue otherwise later.  The Supreme Court has made clear that this is an appropriate ground for seeking intervention.  The Supreme Court explained that an intervenor should be

> able to present their arguments on the issues to a reviewing court which has
> not crystallized its views.  To be sure, if intervention is denied in the initial
> review proceeding, the charged party would not be bound by the decision
> under technical res judicata rules.  Still, the salient facts having been resolved
> and the legal problems answered in this initial review, subsequent litigation
> serves little practical value to the potential intervenor.  In the second
> appellate proceeding, the Court of Appeals would almost invariably defer to
> the initial decision as a matter of stare decisis or of comity.

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. AFL-CIO, Local 283 v. Scofield*, 382 U.S. 205, 212-14 (1965).  Likewise, this Court explained that where a decision "could establish unfavorable precedent that would make it more difficult for [an intervenor] to succeed on similar claims if he brought them in a separate lawsuit of his own, [that] is sufficient to support intervention under our caselaw." *Roane*, 741 F.3d at 151 (citing *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) and *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967)).

The Court's prior decision properly noted that "the district court 'assume[d]' that Taif, rather than the Holman Fenwick law firm, was the 'originator' of the funds transfer." *Estate of Levin*, 45 F.4th at 420 (quoting *Levin*, 523 F. Supp. 3d at 21 ("the Court will assume, as Plaintiffs contend, that Taif is the originator.")).  The district court made several other references to the same effect, describing "Taif as the assumed originator," "assuming it was Taif," and "assuming Taif was the originator." *Levin*, 523 F. Supp. 3d at 22, 23, 24.

Nevertheless, that assumption has not always been stated as clearly as it should be.  For example, this Court's prior opinion stated that "[t]he only entity that

is out of pocket as a result of OFAC's blocking is the Iranian front Taif," which is only true if Taif was the originator and that fact was merely assumed by the Court. *Estate of Levin*, 45 F.4th at 423. (Even then, Iran is not really out the money as Iran has possession of the vessel). Similarly, the district court stated on remand that this Court's prior opinion "held that the Iranian Government did have an ownership interest sufficient for attachment under TRIA," without clarifying that this Court, like the district court, had assumed that the Iranian Government via Taif was the originator of the fund transfer. *Levin*, No. 1:21-cv-00420, D.E. 36 at 7 (D.D.C. June 1, 2023).

Because the issue of who owned the funds at the time they were blocked is very much contested by Crystal—and none of the existing parties have any interest in making that clear to the Court—Crystal seeks to intervene to urge this Court to keep an open mind on that issue and to be careful not to rule in any way that may suggest that it has been decided against Crystal. Although the Court could affirm on the basis that the blocked funds belong to Crystal, if it chooses, the Court can affirm on the same grounds as the district court, while *assuming* as it did that the blocked funds belong to Taif. *See Bowser v. D.C. Dep't of Corr.*, 2022 WL 16545368, at *1 (D.C. Cir. Oct. 31, 2022) (per curiam) ("This court may affirm the district court's dismissal order 'on any basis supported by the record, even if different from the

16

grounds the district court cited.'" (quoting *Parsi v. Daioleslam*, 778 F.3d 116, 126 (D.C. Cir. 2015)).

### D.    Crystal's Interest Is Not Adequately Represented

As explained above, the existing parties' interests are united against Crystal on the issue of who owns the blocked funds. The government and the *Owens* and *Levin* plaintiffs all claim that the funds belong to Iran via Taif because that is their basis for claiming the funds. If the funds belong to Crystal, the government's claim for forfeiting Iranian-owned property and the efforts by the *Owens* and *Levin* plaintiffs to seize Iranian property to satisfy their judgments against Iran would fail.[3]

---

[3] In a recent joint status report, the government foreshadowed that it will argue in the civil forfeiture proceeding that Crystal lacks standing, claiming that the intermediary bank holds title under Article 4A of the UCC. *See $2,340,000*, No. 1:20-cv-01139, D.E. 21 (D.D.C. June 15, 2023). This Court already rejected that same argument when the government argued that the *Owens* and *Levin* plaintiffs, as the then-purported originator of the funds, could not attach the funds for the same reason. *Estate of Levin*, 45 F.4th at 423. This Court applied tracing principles because "innocent third parties must be protected." *Id.* That principle holds even more force in the civil forfeiture proceeding, where Crystal invokes the "Innocent Owner Defense" specifically created by Congress in 18 U.S.C. § 983(d). Moreover, as this Court already noted, the government's claim that the funds belong to an intermediary bank is "inherently at odds" with the government's own grounds for seeking forfeiture, which requires the funds be owned by Iran. *Estate of Levin*, 45 F.4th at 423. If the government is right that the funds belong to the intermediary bank, the government should return the funds to the bank so that the intended transaction can be completed. The funds would then be transferred to Crystal as originally intended.

## II.  ALTERNATIVELY, CRYSTAL IS ENTITLED TO PERMISSIVE INTERVENTION

Although Crystal maintains that it has a right to intervene under Rule 24(a), it certainly should be allowed to intervene under the more expansive rules for permissive intervention under Rule 24(b).  In conformance with Rule 24(b), and as explained above, Crystal has brought a "timely motion" that raises "a claim or defense that shares with the main action a common question of law or fact" and it will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).  Consequently, the Court should allow Crytal's permissive intervention even if it does not find that intervention is warranted as of right.

### CONCLUSION

The Court should grant Crystal's motion to intervene.


Dated: June 27, 2023                            Respectfully submitted,

                                                /s/ *Christopher D. Man*
                                                Christopher D. Man, Bar No. 453553DC
                                                Cari N. Stinebower, Bar No. 457147DC
                                                WINSTON & STRAWN LLP
                                                1901 L Street, N.W.
                                                Washington, D.C. 20036
                                                CMan@winston.com
                                                (202) 282-5000 (ph)
                                                (202) 282-5100 (fax)

## CERTIFICATE OF COMPLIANCE

1.      This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because this brief contains 4,642 words, as determined by the word-count function of Microsoft Word; and

2.      This brief complies with the typeface and type stye requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14 point Times New Roman font.

Dated: June 27, 2023

*/s/ Christopher D. Man*
Christopher D. Man

19

## CORPORATE DISCLOSURE STATEMENT FOR CRYSTAL HOLDINGS LIMITED

Pursuant to Rule 26.1, Crystal Holdings Limited declares that it has no parent company and no publicly held company owns more than 10% of its stock. Crystal Holdings Limited was the owner of the ship *Nautic*. Crystal Holdings Limited holds title to the seized funds at issue in this case as proceeds from its sale of *Nautic*.

Dated: June 27, 2023                    Respectfully submitted,

/s/ *Christopher D. Man*
Christopher D. Man, Bar No. 453553DC
Cari N. Stinebower, Bar No. 457147DC
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, D.C. 20036
CMan@winston.com
(202) 282-5000 (ph)
(202) 282-5100 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2023, the foregoing was served on all counsel of record via the CM/ECF system.

Dated: June 27, 2023

/s/ *Christopher D. Man*
Christopher D. Man