No. 23-7080 (Consolidated with 23-7082)

# In The United States Court of Appeals for the District of Columbia Circuit

ESTATE OF JEREMY LEVIN, et al.,

*Plaintiffs-Appellants,*

*v.*

WELLS FARGO BANK, N.A.,

*Defendant-Appellee.*

JEREMY LEVIN and DR. LUCILLE LEVIN,

*Plaintiffs-Appellants,*

*v.*

UNITED STATES OF AMERICA,

*Intervenor-Appellee,*

WELLS FARGO BANK, N.A.,

*Garnishee-Appellee.*

JAMES OWENS, et al., JUDITH ABASI MWILA, et al., and RIZWAN KHALIQ, et al.

*Petitioners-Appellants,*

*v.*

WELLS FARGO BANK, N.A.,

*Respondent-Appellee,*

UNITED STATES OF AMERICA,

*Intervenor-Appellee.*

On Appeal from the United States District Court
for the District of Columbia (Boasberg, J.)
Civ. Nos. 21-420, 05-2494, 21-126, 21-127, and 21-128

## BRIEF OF RESPONDENT-APPELLEE WELLS FARGO BANK, N.A.

Alex C. Lakatos
Jennifer L. Weinberg
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3312

*Attorneys for Wells Fargo Bank, N.A.*

**CERTIFICATE AS TO PARTIES, RULINGS UNDER
REVIEW, AND RELATED CASES**

Pursuant to D.C. Circuit Rule 28(a)(1), Appellee Wells Fargo Bank, N.A. states that (A) all parties, intervenors, and amici appearing before the district court and in this court are listed in the Opening Briefs for the *Levin* and *Owens* Plaintiffs; (B) references to the rulings at issue appear in the Opening Briefs for the *Levin* and *Owens* Plaintiffs; and (C) the related cases pending in this Court or any other federal or local court in the District of Columbia appear in the Opening Briefs for the *Levin* and *Owens* Plaintiffs. *See generally Levin* Br. 6–7; *Owens* Br. i–iv.

No publicly held corporation owns 10% or more of the stock of Wells Fargo & Company, a publicly traded corporation, which is the ultimate parent of Wells Fargo Bank, N.A.

# TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................. 1

    A.    Factual Background. ............................................... 1

    B.    Procedural History. ............................................... 3

        1.    The competing actions seeking the Blocked Funds. ......................................................... 3

        2.    The First Appeal: *Estate of Levin v. Wells Fargo Bank, N.A.*, 45 F.4th 416 (D.C. Cir. 2022). .................. 6

        3.    The Decision Below Post-Remand ............................ 7

STATEMENT OF JURISDICTION ...................................................... 8

SUMMARY OF ARGUMENT ............................................................ 8

ARGUMENT ................................................................................. 10

I.    Any Rule Of Decision This Court Adopts Should Protect Innocent Third Parties From Competing Claims Or Multiple Liability ...................................................................... 10

II.    The Prior-Exclusive-Jurisdiction Rule As Applied By the District Court Accomplished The Goals of Ensuring Certainty and Fairness for Third Party Intermediaries. ............ 12

    A.    The district court properly applied the Prior-Exclusive-Jurisdiction doctrine. ...................................... 13

    B.    The district court's holding correctly avoids piecemeal, duplicative and potentially inconsistent litigation ............. 15

    C.    The TRIA's "Notwithstanding" Clause does not preempt general common law, including the prior-exclusive-jurisdiction doctrine. ........................................ 16

        1.    The District Court's holding regarding the TRIA's "notwithstanding clause" properly applied a textual analysis consistent with the TRIA's text and with canons of statutory construction. ................ 17

CONCLUSION ............................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Austin v. Smith*,
   312 F.2d 337 (D.C. Cir. 1962) ............................................................ 10

*Bank Markazi v. Peterson*,
   136 S. Ct. 1310 (2016) ....................................................................... 5

*Brunner v. 19 Parker Bros. Shotguns*,
   Civ. A. No. 18-909, 2018 WL 5839384 (E.D. Va. Nov. 6,
   2018) ................................................................................................. 16

*Carter v. United States*,
   530 U.S. 255 (2000) ........................................................................... 17

*Chapman v. Deutsche Bank Nat'l Trust Co.*,
   651 F.3d 1039 (9th Cir. 2011) ............................................................ 14

*Doe v. JPMorgan Chase Bank, N.A.*,
   899 F.3d 152 (2d Cir. 2018) ............................................................... 11

*Entines v. United States*,
   495 F. Supp. 2d 84 (D.D.C. 2007) ...................................................... 15

*First Charter Land Corp. v. Fitzgerald*,
   643 F.2d 1011 (4th Cir. 1981) ............................................................ 16

*Greenbaum v. Islamic Republic of Iran*,
   67 F.4th 428 (D.C. Cir. 2023), *cert. denied sub nom.*
   *Greenbaum v. United States*, No. 23-512, 2024 WL 72022
   (U.S. Jan. 8, 2024) ............................................................ 17, 18, 19, 20

*Heiser v. Islamic Republic of Iran*,
   735 F.3d 934 (D.C. Cir. 2013) ................................................... 2, 10, 15

*Levin v. Bank of New York*,
   Civ. No. 09-5900 (S.D.N.Y.), Dkt. 1309 ..................................... 4, 11, 12

*Levin v. Islamic Republic of Iran,*
  Civ. No. 20-mc-35 (D. S.D. Dec. 31, 2020) Dkt. No. 12.........................4

*Levin v. Islamic Republic of Iran,*
  No. 05-2494 (D.D.C. Dec. 26, 2020), Dkt. 41.........................................4

*Estate of Levin v. Wells Fargo Bank, N.A.,*
  45 F.4th 416 (D.C. Cir. 2022) ................................................... *passim*

*Owens v. Republic of Sudan,*
  2021 WL 131446 (D.D.C. Jan. 14, 2021).......................................3, 4

*Robert C. Herd & Co. v. Krawill Mach. Corp.,*
  359 U.S. 297 (1959) .................................................................. 19

*Shaw v. Railroad Co.,*
  101 U.S. 557 (1879) .................................................................. 19

*State Farm Fire & Cas. Co. v. Tashire,*
  386 U.S. 523 (1967) .................................................................. 11

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) .................................................................. 12

*Taniguchi v. Kan Pac. Saipan, Ltd.,*
  566 U.S. 560 (2012) .................................................................. 17

*Texas & Pacific R. Co. v. Abilene Cotton Oil Co.,*
  204 U.S. 426 (1907) .................................................................. 19

*United States v. $2,340,000.00 Associated with Petroleum
  Tanker Nautic,*
  Civ. No. 20-cv-1139 (D.D.C.)....................................................... 3

*United States v. Bank of N.Y. & Tr. Co.,*
  296 U.S. 463 (1936) .................................................................. 14

*W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24,*
  751 F.2d 721 (5th Cir.1985)....................................................... 16

**Statutes**

8 U.S.C. § 1252(a)(2)(A) ................................................................. 20

8 U.S.C. § (a)(2)(B)-(C) ................................................................. 20

8 U.S.C. § (a)(4)-(5) ........................................................................ 20

18 U.S.C. § 981(c) .............................................................................. 8

28 U.S.C. § 1291 ................................................................................ 8

28 U.S.C. § 1331 ................................................................................ 8

28 U.S.C. § 1605(a)(7) (2007) ........................................................ 8

28 U.S.C. § 1605A (2009) ................................................................ 8

28 U.S.C. § 1610(g) ........................................................................... 5

28 U.S.C. § 1610(g) ......................................................................... 10

28 U.S.C. § 1610 Note ................................................................. 5, 8

§ 201, 116 Stat. 2322, 2337 ............................................................. 5

116 Stat. 2322 ............................................................................. 8, 10

116 Stat. 2337 § 201 ............................................................... 4, 8, 10

**Other Authorities**

American Heritage Dictionary of the English Language 666
    (3rd ed. 1994) ............................................................................ 18

Black's Law Dictionary 998 (7th ed. 1999) ................................. 18

Fed. R. Civ. R. G(5)(a)(i) ............................................................... 14

U.C.C § 4A-104(a) ............................................................................ 1

U.C.C. § 4A-402 ................................................................................ 6

UCC § 4A ............................................................................................ 5

# GLOSSARY OF ABBREVIATIONS

## **Statutes/Provisions**

| | |
|---|---|
| FSIA | Foreign Sovereign Immunities Act, codified at 28 U.S.C. §§ 1330, 1332, 1391, 1441, and 1602–1611 |
| TRIA | Terrorism Risk Insurance Act of 2002, Pub L. No. 107-297, 116 Stat. 2322, codified as amended at 28 U.S.C. § 1610 Note |
| UCC | Uniform Commercial Code |

## **Briefs or Record Material**

| | |
|---|---|
| JA | Joint Appendix |
| *Levin* Br. | Opening Brief for Levin Appellants |
| *Owens* Br. | Opening Brief for Petitioners-Appellants Owens, Mwila, and Khaliq |

## **Entities**

| | |
|---|---|
| OFAC | U.S. Department of the Treasury, Office of Foreign Assets Control |

## BACKGROUND

### A.    Factual Background.

This case concerns an electronic funds transfer. Electronic funds transfers, also known as "wire transfers," are mechanisms for quickly making payments from the account of one party at its bank to the account of another party at another bank. A wire transfer involves several steps. Suppose Smith, who holds an account at Bank X, wants to wire money to Jones, who holds an account at Bank Y. Smith is the "originator" and Jones is the "beneficiary"; Smith's bank is the "originator bank" and Jones's bank is the "beneficiary bank." U.C.C § 4A-104(a).

If the originator bank and the beneficiary bank have a direct relationship (that is, if the originator bank has its own account at the beneficiary bank), no further banks need to be involved in the transaction. Smith instructs Bank X to wire the money to Jones. Bank X debits Smith's account and forwards instructions to Bank Y. Bank Y debits Bank X's account and credits Jones's.

If the originating bank and beneficiary bank do not have a direct relationship, however, the originating bank must enlist the services of at least one third-party bank, called the "correspondent" or "intermediary bank." As before, Smith instructs Bank X to wire the money to Jones, and

Bank X debits Smith's account. Bank X then sends wire instructions to the intermediary bank. The intermediary bank debits Bank X's account at the intermediary bank, credits Bank Y's account at the intermediary bank, and sends instructions to Bank Y. Finally, Bank Y credits Jones's account, completing the transaction. *See generally Heiser v. Islamic Republic of Iran*, 735 F.3d 934, 935–36 (D.C. Cir. 2013) (describing this process).

Wells Fargo served as the intermediary bank for the electronic funds transfer at issue in this case. JA 181. Taif—through Holman Fenwick Willan LLP, acting as the escrow agent—was the originator. Lloyds Bank PLC was the originator bank. Crystal Holdings Limited was the beneficiary, and Credit Suisse was the beneficiary bank. JA 181.



Unlike in the typical wire transfer, Wells Fargo did not forward the funds to Credit Suisse. That is because OFAC concluded that Taif Mining Services was a front company for the Iranian government and ordered Wells Fargo to block the funds after they arrived from Lloyds Bank. Wells Fargo blocked the funds pursuant to OFAC's instructions (the

"Blocked Funds"), and the Blocked Funds remain in Wells Fargo's possession.

## B.    Procedural History.

### 1.    The competing actions seeking the Blocked Funds.

After Wells Fargo blocked the wire transfer, several different parties commenced actions to recover the Blocked Funds. The history is set forth in detail in the district court's June 1, 2023 Opinion, *see* JA 404–28, and in prior briefing in this appeal. Wells Fargo addresses only the broad strokes here.

On May 1, 2020, the United States initiated a civil forfeiture action to obtain the Blocked Funds. *United States v. $2,340,000.00 Associated with Petroleum Tanker Nautic*, Civ. No. 20-cv-1139 (D.D.C.). Three weeks later, the *Owens* Plaintiffs learned of the blocked transfer and moved for writs of attachment. The *Owens* Plaintiffs filed those motions in three cases pending before Judge Bates, Civ. Nos. 01-2244, 08-1377, and 10-356 (D.D.C.), but the writs proceedings were severed and reassigned to Judge Boasberg as Civ. Nos. 21-126, 21-127, and 21-128 (D.D.C.). *See generally Owens v. Republic of Sudan*, 2021 WL 131446, at *2 (D.D.C. Jan. 14, 2021).

-3-

Meanwhile, on August 11, 2020, the *Levin* Plaintiffs filed an application for a writ of execution in New York. *Levin v. Bank of New York,* Civ. No. 09-5900 (S.D.N.Y.), Dkt. 1309. One week later, the *Levin* Plaintiffs filed a similar motion in the District of Columbia, and in December 2020, the *Levin* Plaintiffs filed another application for a writ of execution in South Dakota. *Levin v. Islamic Republic of Iran*, Civ. No. 20-mc-35 (D. S.D. Dec. 31, 2020) Dkt. No. 12. By consent, the *Levin* Plaintiffs' District of Columbia matter was reassigned to Judge Boasberg, to be resolved alongside the *Owens* proceedings. *See Levin v. Islamic Republic of Iran*, No. 05-2494 (D.D.C. Dec. 26, 2020), Dkt. 41.

On March 4, 2021, Judge Boasberg denied the *Levin* and *Owens* Plaintiffs' motions for final orders of condemnation and recovery, and granted the United States' motion to quash Plaintiffs' writs of attachment. JA 194. Both the *Levin* and *Owens* Plaintiffs sought turnover of the Blocked Funds under § 201 of the Terrorism Risk Insurance Act ("TRIA")  and § 1610(g) of the Foreign Sovereign Immunities Act ("FSIA"). These statutes provide that the "blocked assets *of [a] terrorist party*," and the "property *of a foreign state*," and respectively, are subject

to attachment or execution in certain circumstances.[1] The district court held that neither statute applied to the Blocked Funds, however, because the Blocked Funds were not the property or blocked assets "of" Iran.

The district court reached this determination by applying the ownership rules applicable to wire transfers in Article 4A of the UCC. Specifically, the district court interpreted Article 4A as providing that only the party *immediately* upstream from the blocked wire transfer has a relevant ownership interest in the blocked funds. Here, the party immediately upstream from Wells Fargo was Lloyds Bank—not Taif. Because Taif had no interest in the funds blocked midstream, Iran (for which Taif appears to be a front) had no interest in the funds blocked midstream. This, the court concluded, left the Plaintiffs with nothing belonging to Iran to attach. JA 193-94.

The district court also addressed the UCC's subrogation provisions, which subrogate the originator (Taif) to the rights of a downstream entity (Lloyds Bank) in certain circumstances. If subrogation were applicable,

---

[1]   TRIA § 201, 116 Stat. 2322, 2337; 28 U.S.C. § 1610(g) (emphasis added). The TRIA "authorizes execution of judgments obtained under the FSIA's terrorism exception," *Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1318 (2016), and is codified as a footnote to the FSIA. *See* 28 U.S.C. § 1610 Note.

then (1) Taif would stand in Lloyds Bank's shoes; (2) Taif (and hence, Iran) would have an interest in the Blocked Funds; and (3) Plaintiffs would have identified an attachable interest of Iran to pursue. However, the district court concluded that the prerequisites for Article 4A subrogation had not been met. JA 193.

Accordingly, the court held that "Iran has no interest in the Wells Fargo funds that qualifies as attachable or condemnable under the TRIA or FSIA." *Id.*

### 2. The First Appeal: *Estate of Levin v. Wells Fargo Bank, N.A.*, 45 F.4th 416 (D.C. Cir. 2022).

In the prior appeal, this Court reversed the district court, holding that the Iranian Government did have an ownership interest sufficient for attachment under the TRIA. *Estate of Levin*, 45 F.4th at 422-24. This Court's holding was based on its determination that the objectives of U.C.C. § 4A-402 (which seeks to minimize disruptions to wire transfers) and OFAC's blocking (which seeks to disrupt terrorist wire transfers) were incompatible, therefore the former could not be used as a rule of decision for determining originator's ownership interest under the TRIA, which allows for execution against OFAC blocked assets. *See id.* at 422.

This Court remanded without opining on any alternative basis for quashing the writs. *Id.* at 424. (noting that "[t]he district court's judgment rested entirely on this holding and its decision is all that we have addressed.").

### 3.    The Decision Below Post-Remand.

On remand, the government renewed its motion to quash. *See* Renewed Mot. to Quash, Dkt. 24. Again the district court granted the government's motion to quash the writs of attachment. JA 427-28**.**

Examining Plaintiffs' attachment arguments under the TRIA, the district court held that the assets in question failed to be "blocked" assets subject to recovery under the TRIA because the funds were "unfrozen" by virtue of being subject to an OFAC license. JA 414. Alternatively, even if the assets were "blocked" under the TRIA, the district court held that the scope of the TRIA's "notwithstanding" clause does not overcome conflicting jurisdictional common law doctrines, JA 417-19, and that the  prior-exclusive jurisdiction doctrine bars Plaintiffs from attachment under the TRIA and the FSIA in collateral proceedings filed after the district court already had assumed jurisdiction over the *res* at issue, here, the Blocked Assets. JA 421.

Similarly, the district court held that relief was further precluded under the FSIA for two additional reasons. First, the separate civil forfeiture statute, 18 U.S.C. § 981(c), prohibited it from issuing orders or writs directed to property that has become the subject of a government civil-forfeiture action. JA 422.  Second, the district court held that the assets in question failed to be property "used for commercial activity in the United States," under the FSIA.  JA 422–26.

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction of both underlying actions pursuant to 28 U.S.C. § 1331; section 201 of the Terrorism Risk Insurance Act, Pub. L. 107-297, 116 Stat. 2337 (Nov. 26, 2002) (codified as amended at 28 U.S.C. § 1610 note (2012)) ("TRIA § 201"), and the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1605(a)(7) (2007), 1605A (2009), and 1610(c). This Court has jurisdiction over these consolidated appeals under 28 U.S.C. § 1291.

## SUMMARY OF ARGUMENT

Intermediary banks have legitimate and important interests in ensuring that the rules governing attachment under the TRIA and the FSIA are clear and do not impose undue costs on innocent third parties. *See Estate of Levin*, 45 F.4th at 426  (Pillard, J., concurring) (noting that in

-8-

deciding these complex questions of attachment, courts must consider ways to "reduce legal uncertainty for innocent owners and third parties" when adjudicating competing claims to blocked assets). This Court enjoys broad discretion in crafting federal common law, and should craft a rule of decision that sufficiently protects the interests of intermediary banks in attachment cases.

The district court's decision correctly promoted these interests. The prior-exclusive-jurisdiction doctrine is a clear, well-established rule of common law that precludes a court from exercising jurisdiction over a *res* when a separate suit over that property has already been brought.

In particular, the district court's holding that the TRIA's "Notwithstanding" Clause does not preempt general common law properly analyzed the TRIA's text and properly applied applicable canons of statutory construction. And its related holding that the prior-exclusive-jurisdiction doctrine bars Plaintiffs from attachment in the circumstances of this case achieves the goal of protecting innocent third parties from undue uncertainty and burden by applying the doctrine in a manner that avoids piecemeal litigation.

-9-

This court should affirm the district court below, or in the alternative, ensure that it crafts a rule of decision that protects innocent third parties, like Wells Fargo, from competing claims or multiple liability.

## ARGUMENT

I. **Any Rule Of Decision This Court Adopts Should Protect Innocent Third Parties From Competing Claims Or Multiple Liability.**

Intermediary banks, as innocent third parties, have legitimate and important interests in ensuring that the rules governing attachment under TRIA and the FSIA are clear, do not impose undue costs on them, and preclude any risk of multiple liability or inconsistent obligations. As this Court explicitly admonished in deciding the prior appeal in this matter, courts must consider ways to "reduce legal uncertainty for innocent owners and third parties" when adjudicating competing claims to blocked assets. *Estate of Levin*, 45 F.4th at 426 (Pillard, J., concurring).

Likewise, in *Heiser*, this Court stressed that garnishment statutes, including § 201 of TRIA and § 1610(g) of the FSIA, should be strictly construed to avoid the risk of "punishing innocent third parties." 735 F.3d at 939; *see also Austin v. Smith*, 312 F.2d 337, 340–43 (D.C. Cir. 1962). Similarly, in the interpleader context, which is often necessitated by competing garnishment efforts, the Supreme Court has long recognized the need

to protect neutral third parties from competing claims and the threat of multiple liability. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 534 (1967).

In the Second Circuit, Judge Chin also recognized the importance of shielding intermediary banks from competing claims. His dissent in *Doe v. JPMorgan Chase Bank, N.A.*, 899 F.3d 152 (2d Cir. 2018) holds that for plaintiffs to garnish blocked wire transfers, any upstream bank(s) must first relinquish their claims to the assets. *See id.* at 160-61. This approach ensures that intermediary banks are free from competing claims seeking the same assets. Although this court did not adopt such an approach in *Estate of Levin*, nothing precludes this Court from doing so here or in another appropriate case.

This case serves as a chief example of the burdens that befall intermediary banks absent clearly established rules of the road. First, Wells Fargo has already been subjected to ongoing and costly litigation. The bank is now defending its interests on appeal for the *second* time and has been litigating this matter for over four years to date. Second, additional cases concerning these same Blocked Assets remain pending in two other jurisdictions, New York and South Dakota, *see Levin*, No. 20-mc-35 (D.

-11-

S.D.); *Levin*, No. 09-5900 (S.D.N.Y.), posing a risk of multiplying litigation and inconsistent decisions. Wells Fargo has been subject to these burdens and risks despite claiming no interest in the disputed Blocked Assets, and acting only as an innocent intermediatory that properly complied with directions from OFAC.

This court enjoys broad discretion in crafting federal common law, and a rule of decision crafted to protect intermediary banks would not only heed the sensible guidance from this Circuit and the Supreme Court—it would also reduce litigation, increase judicial efficiency, and remove unnecessary procedural impediments to collection efforts meant to benefit terrorist victims.

## II. The Prior-Exclusive-Jurisdiction Rule As Applied By the District Court Accomplished The Goals of Ensuring Certainty and Fairness for Third Party Intermediaries.

Although the District Court's decision provides several alternative grounds on which this Court may resolve the pending appeal, this Court should reach the prior-exclusive-jurisdiction doctrine first. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (noting that "every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under

review") (internal citations omitted).  Because the District Court properly applied that doctrine, and it resolves the dispute in full, this Court need look no further. Plaintiffs do not dispute that, if this doctrine is applicable, it bars the relief they seek.  Rather, they argue only that the doctrine is inapplicable in the TRIA context present here. Owens Br. 58. As shown below, that is not correct.

## A.    The district court properly applied the Prior-Exclusive-Jurisdiction doctrine.

The district court held that, once the government had initiated proceedings concerning the *res* (i.e., the Blocked Assets) through its first-filed forfeiture action, then the Prior-Exclusive-Jurisdiction doctrine barred Plaintiffs from attaching the Wells Fargo funds under the TRIA in collateral proceedings. JA 421. Not only does precedent confirm the validity of the district court's holding, but that holding advances this Court's stated goal of protecting innocent third party intermediaries like Wells Fargo.

As the district court explained, "the prior-exclusive jurisdiction rule precludes a court from exercising jurisdiction over a *res* when a separate suit over that property has already been brought." JA 420. As a matter

of law, the court correctly determined that the first-filed suit takes precedence, regardless of whether other actions concerning the property are filed in the same district or even before the same judge. *See* JA 421 (citing *United States v. Bank of N.Y. & Tr. Co.*, 296 U.S. 463, 477 (1936) for the proposition that "If the two suits are *in rem* or *quasi in rem*, so that the court must have possession or control of the res in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other.").

Here, the application of the Prior-Exclusive-Jurisdiction doctrine is clear. As the district court correctly noted, "[b]ecause the Government's civil-forfeiture action obtained *in rem* jurisdiction over the assets first, that proceeding acquired exclusive jurisdiction over them. Plaintiff's must seek relief there. . . as opposed to in a separate proceeding." JA 420; Fed. R. Civ. R. G(5)(a)(i). Therefore, the district court properly held that it lacked jurisdiction to grant the relief that Plaintiffs requested through collateral proceeding, albeit a collateral proceeding that happened before the same district court. JA 419 (citing *Chapman v. Deutsche Bank Nat'l Trust Co.*, 651 F.3d 1039, 1043 (9th Cir. 2011)). Because the district court

-14-

correctly applied this straightforward doctrine, this court should affirm the district court's ruling.

**B.    The district court's holding correctly avoids piece-meal, duplicative and potentially inconsistent litigation.**

Not only is the district court's holding on the Prior-Exclusive-Jurisdiction doctrine correct as a matter of law, it also provides a clear, bright-line rule that courts may apply uniformly without confusion when multiple parties seek (whether through forfeiture, the TRIA, or otherwise) to recover on the same blocked wire transactions.

By contrast, Plaintiffs' approach allows for parallel competing proceedings, multiplying the burden on the judiciary and innocent third party intermediaries. This is antithetical to the concept that these statutes must be strictly construed to avoid the risk of "punishing innocent third parties," *Heiser*, 735 F.3d at 939; and to "reduce legal uncertainty for innocent owners and third parties" when adjudicating competing claims to blocked assets, *Estate of Levin*, 45 F.4th at 426 (Pillard, J., concurring).

Moreover, duplicative litigation, especially with the risk of inconsistent outcomes, is to be avoided. *Entines v. United States*, 495 F. Supp.

-15-

2d 84, 85 (D.D.C. 2007) (explaining, in the context of competing federal litigation, that "[t]he concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.") (quoting *W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24,* 751 F.2d 721, 729 (5th Cir.1985)). The prior-exclusive-jurisdiction doctrine achieves that result. *First Charter Land Corp. v. Fitzgerald*, 643 F.2d 1011, 1014 (4th Cir. 1981) (stating that the doctrine "forecloses unseemly and inefficient power struggles" and avoids "inconsistent adjudication[s]"); *Brunner v. 19 Parker Bros. Shotguns*, Civ. A. No. 18-909, 2018 WL 5839384, at *2 (E.D. Va. Nov. 6, 2018) (explaining that the doctrine "prevent[s] the logical and practical difficulty of two courts simultaneously vying for possession or control of the same property") (quotation omitted). This court should decline Plaintiffs' invitation to proceed under a rule that allows such unwelcome results.

## C. The TRIA's "Notwithstanding" Clause does not preempt general common law, including the prior-exclusive-jurisdiction doctrine.

Although the district court's application of the Prior-Exclusive Jurisdiction doctrine was simple, clear, and well established, Plaintiffs seek

to avoid its impact by relying on the TRIA's "Notwithstanding Clause." But as the district court held, the plain language of the TRIA does not reach that far.

> **1.    The District Court's holding regarding the TRIA's "notwithstanding clause" properly applied a textual analysis consistent with the TRIA's text and with canons of statutory construction.**

This court has previously recognized that the TRIA's "notwithstanding any other provision of law" clause "is at best ambiguous." *Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 432 (D.C. Cir. 2023), *cert. denied sub nom. Greenbaum v. United States*, No. 23-512, 2024 WL 72022 (U.S. Jan. 8, 2024). This court in *Greenbaum* did not address the precise question at issue here, but its analytical framework is instructive. The *Greenbaum* court properly began with examining the TRIA's text and noted that "[w]hen a term goes undefined in a statute, we give the term its ordinary meaning." *Id.* (citing *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012)).

As the phrase "provision" of law remains undefined in the TRIA, this Court looked to contemporaneous textual sources to determine its meaning. *See id.* at 432-33; *see also Carter v. United States*, 530 U.S. 255,

-17-

271 (2000) (noting that in interpreting statutes "we begin by examining the text."). Pursuant to those sources, this court explained that "provision" refers to a "clause in a statute, contract, or other legal instrument" and not a common law doctrine of federal sovereign immunity:

> The TRIA was enacted in 2002. The eighth edition of Black's Law Dictionary, published in 2004, defines "provision" as a "clause in a statute, contract, or other legal instrument." Federal sovereign immunity is not such an "instrument," which Black's further defines as a "written legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate." *See also* Black's Law Dictionary 998 (7th ed. 1999) ("A stipulation or qualification, esp. a clause in a document or agreement"). Other dictionaries are consistent with Black's. *See* Merriam Webster's Dictionary of Law 394 (1996) (defining 'provision' as "a stipulation (as a clause in a statute or contract) made beforehand"); *accord* American Heritage Dictionary of the English Language 666 (3rd ed. 1994) ("A stipulation or qualification, esp., a clause in a document").

67 F.4th at 432-33.

Application of *Greenbaum* here leads to the same conclusion: common-law doctrines are not "provisions" of law subject to the TRIA's "Notwithstanding" Clause. The district court thus correctly determined that "[c]ommon-law doctrines are 'not such an "instrument,"' which Black's further defines as a 'written legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory

note, or share certificate'" and held that the court could not exercise jurisdiction over a later-filed action in which Plaintiffs sought to attach the funds held by Wells Fargo. JA 418 (citing *Greenbaum*, 2023 WL 3312348, at *3).

The district court's textual approach also comports with established cannons of statutory construction.  As the Supreme Court has long outlined, "'(n)o statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express.'" *Robert C. Herd & Co. v. Krawill Mach. Corp.*, 359 U.S. 297, 304–05 (1959) (citing *Shaw v. Railroad Co.*, 101 U.S. 557, 565 (1879); and *Texas & Pacific R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 437 (1907)); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 52 (1st ed. 2012) ("A statute will be construed to alter the common law only when that disposition is clear.").

Here, the TRIA's "notwithstanding clause" is silent as to any abrogation of the common law. Both the district court and the *Greenbaum* court noted that this silence is material. *See* JA 418-19; *Greenbaum*, 67

F.4th at 433. *Greenbaum* in particular looked to other Congressional statutes and noted that "Congress has recognized that the phrase 'other provision of law' does not clearly extend beyond statutory law." *See* 67 F.4th at 433 (citing 8 U.S.C. § 1252(a)(2)(A), (a)(2)(B)–(C), (a)(4)–(5), noting that the Immigration and Naturalization Act expressly states "'Notwithstanding any other provision of law (statutory or non-statutory)'"). The district court thus correctly applied *Greenbaum*'s teachings and those of long-establish cannons of statutory construction.

## CONCLUSION

Wells Fargo respectfully submits that this court should affirm or, in the alternative, that the rule of decision adopted by this court should protect innocent intermediary banks from the risk of competing claims, conflicting court orders, or multiple liability.

Respectfully submitted,

/s/ *Alex C. Lakatos*
Alex C. Lakatos
Jennifer L. Weinberg
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3312

*Attorneys for Wells Fargo Bank, N.A.*

February 12, 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 3,876 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Century Schoolbook 14-point font.

/s/ *Alex C. Lakatos*
Alex C. Lakatos
*Counsel for Wells Fargo Bank, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on February 12, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Alex C. Lakatos*
Alex C. Lakatos
*Counsel for Wells Fargo Bank, N.A.*