**NOT YET SCHEDULED FOR ORAL ARGUMENT**

# United States Court of Appeals
# for the District of Columbia Circuit

### No. 23-7080

(Consolidated with 23-7082)

Estate of JEREMY ISADORE LEVIN; Estate of LUCILLE HARE LEVIN;
SUZELLE M. SMITH, Executrix of the Estate of LUCILLE HARE LEVIN
and Successor in Interest to JEREMY LEVIN and DR. LUCILLE LEVIN,

*Plaintiffs-Appellees,*

JAMES OWENS;

All Plaintiffs, 1:01-cv-02244 *Owens, et al., v.
Republic of Sudan, et al*., Plaintiffs in 1:21-cv-00126;

JUDITH ABASI MWILA;

All Plaintiffs, 1:08-cv-01377 *Mwila*, *et al. v. The Islamic
Republic of Iran, et al*., Plaintiffs in 1:21-cv-00127;

*(For Continuation of Caption See Inside Cover)*

*On Appeal from the United States District Court for the
District of Columbia in Nos. 1:21-cv-00420-JEB.*

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

SUZELLE M. SMITH
HOWARTH & SMITH
30745 Pacific Coast Highway, Suite 2046
Malibu, California 90265
Tel.: (213) 955-9400
Fax: (213) 622-0791
ssmith@howarth-smith.com

*Counsel for Plaintiffs-Appellants*

April 3, 2024



RIZWAN KHALIQ;

All Plaintiffs, 1:10-cv-00356 *Khaliq*, *et al. v. Republic of Sudan, et al.*, Plaintiffs in 1:21-cv-00128,

*Plaintiffs-Appellants,*

*v.*

WELLS FARGO BANK, N.A.,

*Defendant-Appellee,*

UNITED STATES OF AMERICA,

*Intervenor-Appellee.*

CRYSTAL HOLDINGS LIMITED,

*Amicus Curiae.*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................................................3

TABLE OF AUTHORITIES..........................................................................5

GLOSSARY.....................................................................................................9

STATUTES AND REGULATIONS...........................................................11

SUMMARY OF ARGUMENT ....................................................................11

I.    THE DOJ OFAC LICENSE DID NOT UNFREEZE THE BLOCKED
      ASSETS....................................................................................................12

      A.    The Assets Here Were Blocked and Frozen Under IEEPA and
            Executive Orders and Placed Within TRIA's Scope .........................17

      B.    The IEEPA and OFAC Blocked Assets Are not Unblocked or
            Unfrozen by the Issuance of the Government's OFAC Limited
            License, The Filing of a Forfeiture Case or the Arrest Warrant ........22

            1.    The OFAC License Is Conditional on Its Face as It Must
                  Be ..............................................................................................22

            2.    The Cases Cited by DOJ Are Non-Binding, Non-
                  Persuasive and Distinguishable................................................27

II.   THE FORFEITURE IN REM STATUTE AND THE ASSOCIATED
      WARRANT DO NOT ELIMINATE TRIA'S JURISDICTION OVER
      IEEPA BLOCKED ASSETS.......................................................................30

III.  THE BLOCKED ASSETS HERE WERE SEIZED AND FROZEN ..........32

IV.   CONCLUSION..........................................................................................38

CERTIFICATE OF COMPLIANCE...................................................................39

CERTIFICATE OF SERVICE ..........................................................................40

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*American Airways Charters, Inc. v. Regan*,
746 F.2d 865 (D.C. Cir. 1984) .......................................................14, 16, 21

*Anderson v. Stephens*,
875 F.2d 76 (4th Cir. 1989) ...................................................................15

*Antolok v. United States*,
873 F.2d 369 (D.C. Cir. 1989) ...............................................................13

*Bank of New York v. Rubin*,
05-cv-4926, 2006 WL 633315 (S.D.N.Y. Mar. 15, 2006),
 *aff'd in part, vacated in part*, 484 F.3d 149 (2d Cir. 2007)...........................27, 28

*Consarc Corp. v. United States Treasury Department*,
71 F.3d 909 (D.C. Cir. 1995) .................................................................20

*Dames & Moore v. Regan*,
453 U.S. 654 (1981)........................................................................13, 14

*Doe v. Federal Election Commission*,
920 F.3d 866 (D.C. Cir. 2019) ...............................................................29

*Estate of Levin v. Wells Fargo Bank*,
45 F.4th 416 (D.C. Cir. 2022)...................................................11, 17, 24, 37

*Fares v. Smith*,
901 F.3d 315 (D.C. Cir. 2018) ...............................................................17

*Federal Trade Commission v. Pukke*,
53 F.4th 80 (4th Cir. 2022) ...................................................................15

*Gallo v. District of Columbia*,
No. 1:21-cv-03298 (TNM), 2023 WL 7552703 (D.D.C. Nov. 14, 2023)...............34

*Hausler v. JP Morgan Chase Bank, N.A.*,
740 F. Supp. 2d 525 (S.D.N.Y. 2010) .....................................................35

*Hausler v. JPMorgan Chase Bank, N.A.*,
845 F. Supp. 2d 553 (S.D.N.Y. 2012) .......................................................................21

*Heiser v. Islamic Republic of Iran*,
735 F.3d 934 (D.C. Cir. 2013) ...........................................................................17, 18

*Hilton Washington Corp v. District of Columbia*,
777 F.2d 47 (D.C. Cir. 1985) .................................................................................16

*In re 650 Fifth Ave. & Related Properties*,
881 F. Supp. 2d 533 (S.D.N.Y. 2012) .......................................................................21

*Levinson v. Kuwait Finance House (Malaysia) Berhad*,
44 F.4th 91 (2d Cir. 2022) .....................................................................................14

*Proctor v. District of Columbia*,
531 F. Supp. 3d 49 (D.D.C. 2021) ...........................................................................33

*Smith ex rel. Estate of Smith v. Federal Reserve Bank of New York*,
346 F.3d 264 (2nd Cir. 2003)..................................................................34, 36, 37

*Sparta Florida Music Grp. v. Chrysalis Records*,
566 F. Supp. 321 (S.D.N.Y. 1983) ...........................................................................26

*U.S. Telecom Association v. Federal Communications Commission*,
227 F.3d 450 (D.C. Cir. 2000) ................................................................................15

*United States v. $1,071,251.44 of Funds*,
324 F. Supp. 3d 38 (D.D.C. 2018)...........................................................................20

*United States v. $148,500 of Blocked Funds in the Name of
Trans Multi Mechanics, Co., Ltd.*,
No. CV 16-1029 (RJL), 2019 WL 1440882 (D.D.C. Mar. 29, 2019) .....................23

*United States v. $429,900.00 of Blocked Funds
Associated With Ryer Int'l Trading, Ltd.*,
No. CV 20-2546 (RC), 2021 WL 5050070 (D.D.C. Nov. 1, 2021) .........................23

*United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*,
783 F.3d 607 (7th Cir. 2015) ...............................................................26, 27, 31, 34

*United States v. Holy Land Found. Relief & Dev.*,
722 F.3d 677 (5th Cir. 2013) ........................................................................27

*United States v. Parcel of Rumson, N.J., Land*,
507 U.S. 111 (1993) ..............................................................................30, 32

*United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in U.S. Currency*,
859 F.3d 1085 (D.C. Cir. 2017) ...................................................................30

*Weininger v. Castro*,
462 F. Supp. 2d 457 (S.D.N.Y. 2006) ..........................................................14

*Weinstein v. Islamic Republic of Iran,*
274 F. Supp. 2d 53 (D.D.C. 2003) .........................................................27, 28

*Weinstein v. Islamic Republic of Iran,*
299 F. Supp. 2d 63 (E.D.N.Y. 2004) .....................................................33, 34

*Zevallos v. Obama*,
10 F. Supp. 3d 111 (D.D.C. 2014) ................................................................17

*Zevallos v. Obama*,
793 F.3d 106 (D.C. Cir. 2015) .....................................................................16

## Statutes

28 U.S.C. § 1610(f)(1). ................................................................................16

50 U.S.C. § 1702(a)(1)(B) ...........................................................................17

Terrorism Risk Insurance Act, Pub. L. No. 107-297,
116 Stat. 2322 (Nov. 26, 2002) ..................................... 12, 13, 14, 15, 16, 17, 18, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 37, 38

## Other Authorities

31 C.F.R. § 501.603 ...................................................................................25

31 C.F.R. § 501.801 ..............................................................................23, 25

31 C.F.R. pt. 501 .....................................................................................24

Basic Information on OFAC and Sanctions,
  https://ofac.treasury.gov/faqs/topic/1501 (last accessed March 20, 2024) ..........19

Effect (emphasis added),
  https://dictionary.cambridge.org/us/dictionary/english/effect (last accessed
  March 20, 2024) ....................................................................................24

OFAC Frequently Asked Question #752, https://ofac.treasury.gov/faqs/752
  (last accessed March 20, 2024) ...............................................................19

OFAC Iran Sanctions, Topic 1551, https://ofac.treasury.gov/faqs/topic/1551
  (last accessed March 20, 2024) ...............................................................19

United States Department of Treasury,
  *Foreign Assets Control Regulations for the Financial Community*,
  p. 3 (emphasis added), https://ofac.treasury.gov/media/16151/download?inline
  (last accessed March 20, 2024) ...............................................................20

# **GLOSSARY**

| | |
|---|---|
| DOJ | United States Department of Justice |
| EFT | Electronic Funds Transfer |
| FSIA | Foreign Sovereign Immunities Act, codified at Title 28, §§ 1330, 1332, 1391, 1441, and 1602–1611 of the United States Code |
| Government | United States of America |
| Government Brief | Brief of the Government as Appellee |
| IEEPA | International Emergency Economic Powers Act |
| Iran | The Islamic Republic of Iran |
| JA | Joint Appendix |
| Levins | Appellants Jeremy Levin, Dr. Lucille Levin, Estate of Jeremy Isadore Levin, Estate of Lucille Hare Levin, and Suzelle M. Smith, Executrix of the Estate of Lucille Hare Levin and Successor in Interest to Jeremy Levin and Dr. Lucille Levin |
| Levin Opening Brief | Opening brief for the Levins |

| | |
|---|---|
| OFAC | U.S. Department of Treasury's Office of Foreign Assets Control |
| Taif | Taif Mining Services, LLC, the entity that originated the electronic funds at issue here |
| Threat Reduction Act | Iran Threat Reduction and Syria Human Rights Act of 2012 |
| TRIA | Terrorism Risk Insurance Act, Pub. L. 107-297, 116 Stat. 2322 (Nov. 26, 2002) (codified as amended at 28 U.S.C. § 1610 note (2012)) |
| U.C.C. | Uniform Commercial Code |
| Wells Fargo | Wells Fargo Bank, N.A., current holder of the Taif Blocked Funds and intermediary bank in the blocked electronic funds transfer at issue in this case |
| Wells Fargo Brief | Brief of Wells Fargo as Appellee |

## STATUTES AND REGULATIONS

All applicable statutes, etc., are contained in the Opening Brief for the Levin Appellants.

## SUMMARY OF ARGUMENT

This Court in *Estate of Levin v. Wells Fargo* reversed the District Court and held that the blocked funds here ("Iranian Blocked Assets" or "Blocked Assets" or "Blocked Funds") are subject to collection by the Levins to satisfy their judgment against Iran, and the District Court committed error in quashing the Levins' writ. *Estate of Levin v. Wells Fargo Bank*, 45 F.4th 416, 423-24 (D.C. Cir. 2022) ("Tracing resolves this case in plaintiffs' favor. The … $9.98 million *blocked funds* at Wells Fargo 'are traceable to Taif' and thus to Iran… The district court therefore erred  …." (internal citations omitted));  United States Government Brief ("Government Brief") at 16.[2]

However, the United States ("Government" or "DOJ") then went back to the District Court asking again to quash the Levins' writ.  The District Court did so: "In quashing the Writs for a second time, the District Court … found both that the Funds were not frozen under IEEPA due to the United States' OFAC license and

---

[2] All pagination references are to the page numbers on the ECF filing ribbon which appears at the top of each page of the Government Brief. The Levins refer to this same pagination for each of the other parties' briefs to which they refer in this Reply Brief.

that the prior exclusive jurisdiction doctrine prevented Creditors from obtaining

orders regarding the Funds outside the Forfeiture Action.  JA412–21."

Government Brief at 28.

In addition to the rulings by the District Court, the Government now also

argues that the Blocked Assets were never frozen in the first place and are not

blocked because they were never "seized."  The Blocked Assets were seized and

frozen under IEEPA, and the conditional OFAC license was not a final disposition

order issued under a statute other than IEEPA or by a court judgment.  Therefore,

the Blocked Assets are within TRIA's scope. Additionally, TRIA's express

notwithstanding language prevents any other inconsistent provision of law,

including the civil forfeiture statute and related *in rem* doctrines from defeating its

jurisdiction and shutting out execution by FSIA Judgment holders on blocked

assets, as discussed in detail below.

## I.    THE DOJ OFAC LICENSE DID NOT UNFREEZE THE BLOCKED ASSETS

The Government argues that: "The [Blocked] Funds are … not "frozen"

under IEEPA [and thus not blocked under TRIA]."  Government Brief at 28 ("For

TRIA, [the District Court] found … the Funds were not frozen under IEEPA due to

the United States' OFAC license….").  TRIA specifically authorizes execution by

victims against "frozen" assets in its definition of Blocked asset.  Terrorism Risk

Insurance Act ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322 (Nov. 26, 2002)

§ 201 (d)(2) ("'[B]locked asset' means--(A) any asset seized or frozen by the United States under… IEEPA…."). The Government states, without any authority: "the 'frozen' assets subject to TRIA's attachment provisions are [only] those where the Government has prohibited *all* transactions in them— i.e., *fully* immobilized them under its blocking authorities." Government Brief at 20 (emphasis added). It argues that when OFAC issued its license to litigate the forfeiture action against the funds, this meant the funds were not "fully immobilized," therefore they are "unfrozen." Further, DOJ argues for a non-existent distinction between blocked and frozen under TRIA without legal or logical support. The Government cites *Dames & Moore v. Regan*, 453 U.S. 654 (1981) ("*Dames*"), a case decided before TRIA which does not deal with the definition of blocked assets under TRIA or otherwise. *Dames* does not distinguish "freezing" as being anything other than "blocking" under the power of the executive. *Dames* held very narrowly that the President, before TRIA, with the apparent acquiescence of Congress, can settle claims against a foreign nation as part of a treaty. *See Antolok v. United States*, 873 F.2d 369, 384 (D.C. Cir. 1989). In fact, the Supreme Court in *Dames* uses "blocking" and freezing" interchangeably. *Dames*, 453 U.S. at 673 ("We likewise note that, by the time petitioner instituted this action, the President had already entered the *freeze* order [under IEEPA]. Petitioner proceeded against the *blocked* assets …."). The

13

sentence the Government quotes from *Dames* is the same in pertinent part: "IEEPA *blocking* 'orders permit the President to maintain … "[t]he *frozen* assets.'" Government Brief at 20.  This Court also uses blocking and freezing as equivalents in the terrorist context.  *American Airways Charters, Inc. v. Regan*, 746 F.2d 865, 867 (D.C. Cir. 1984) ("This designation, under … 31 C.F.R. pt. 515 (1983), effectively *froze or blocked* all of AAC's assets." (emphasis added)).

Furthermore, TRIA, enacted after *Dames,* changed the landscape for victims seeking to satisfy their judgments against terrorists from blocked assets held by the United States.  *See, e.g.*, *Weininger v. Castro*, 462 F. Supp. 2d 457, 483 (S.D.N.Y. 2006) ("TRIA § 201 was passed in order to 'deal comprehensively with the problem of enforcement of judgments rendered on behalf of victims of terrorism in any court of competent jurisdiction by enabling them to satisfy such judgments through the attachment of blocked assets of terrorist parties. It is the intent of the Conferees that Section 201 establish that such judgments are to be enforced.'" (internal citation omitted)); *Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th 91, 96 (2d Cir. 2022) ("TRIA[] allows FSIA judgment holders to enforce their judgments using attachment or execution...").  *Dames* in no way limits the scope of TRIA's reach, which expressly includes frozen assets among blocked assets.  TRIA § 201.

14

If frozen meant only assets which are "fully" immobilized, then TRIA specifying such assets as available for execution would make no sense. If blocked assets under the Executive Orders and OFAC regulations were truly not subject to any other transactions, and that was the correct definition of "frozen," then the victims could not execute [a transaction] on frozen assets, which are specifically part of the definition of "blocked" under TRIA. Furthermore, the Government would not be able to enter into "transactions" as to the blocked assets, such as filing a civil forfeiture action. A Court should not interpret a federal statute to read part of it out of existence. *U.S. Telecom Association v. Federal Communications Commission*, 227 F.3d 450, 463 (D.C. Cir. 2000) ("'We are not at liberty to construe any statute so as to deny effect to any part of its language.'" (internal citation omitted)).

The Government cites two other cases, both from the Fourth Circuit, *Anderson v. Stephens*, 875 F.2d 76, 79–80 (4th Cir. 1989) and *Federal Trade Commission v. Pukke*, 53 F.4th 80, 109 (4th Cir. 2022). Neither of these cases support the DOJ positions and neither have anything to do with terrorism statutes or blocking and freezing terrorist assets.

DOJ also argues that frozen excludes "regulated" assets: "Congress clearly did not intend to equate assets 'frozen' under IEEPA with those merely regulated by the statute [IEEPA]." Government Brief at 33. DOJ states that:

15

> FSIA, passed before TRIA, covers 'any property with respect to which financial transactions are *prohibited or regulated pursuant*' to IEEPA. 28 U.S.C. § 1610(f)(1) (emphasis added). By contrast, TRIA only covers assets 'seized or frozen by the United States' under IEEPA. TRIA § 201(d)(2). Had Congress wished to encompass all assets subject to regulation under IEEPA Section 1702(a)(1)(B), it knew how to enact such a law—yet it did not do so in TRIA.

Government Brief at 34.

Again, the Government's position makes no sense. TRIA covers all blocked assets which are seized or frozen, and it is not limited to transactions "prohibited" or "regulated." Compare TRIA § 201(d)(2) to 28 U.S.C. § 1610(f)(1). TRIA's definition, if it differs from § 1610(f)(1) is broader, not narrower. Assets blocked under IEEPA are not merely "regulated" as assets might be which are still under the control of the owner. *Hilton Washington Corp v. District of Columbia*, 777 F.2d 47, 49 (D.C. Cir. 1985) ("The [Supreme] Court stressed 'the distinction between a permanent physical occupation …, and a regulation that merely restricts the use of property .…'" (internal citation omitted)). When IEEPA blocks assets, as here, the funds are "regulated" and immobilized for prohibited actions as to the owner or anyone else, without a court order or OFAC permission. *American Airways Charters, Inc. v. Regan*, 746 F.2d 865, 869 (D.C. Cir. 1984) ("AAC's assets are blocked, and may not be touched without OFAC's permission."); *Zevallos v. Obama*, 793 F.3d 106, 110 (D.C. Cir. 2015) ("…persons designated a

threat … under IEEPA … are added to the 'Specially Designated Nationals and Blocked Persons List,' and all their assets in the United States or under the control of any person who is in the United States are 'block[ed],' or effectively frozen." (internal citations omitted)); *Fares v. Smith*, 901 F.3d 315, 318 (D.C. Cir. 2018) ("All persons on OFAC's combined [SDN] list have their 'property and interests in property within the United States' frozen, and no one may deal in those assets."). Both Iran and Taif are on the terrorist designation OFAC list.  *See Heiser v. Islamic Republic of Iran,* 735 F.3d 934, 937 (D.C. Cir. 2013) (Under TRIA "a 'terrorist party' [is] 'a foreign state designated as a state sponsor of terrorism'...Iran has been so designated" (internal citations omitted)); *Estate of Levin v. Wells Fargo Bank*, 45 F.4th 416, 417 (D.C. Cir. 2022) ("Taif Mining itself is now on OFAC's list.").  This Court has stated that such assets are frozen. *Fares,* 901 F.3d at 318.

### A. The Assets Here Were Blocked and Frozen Under IEEPA and Executive Orders and Placed Within TRIA's Scope

In addition to regulating, IEEPA gives the President the authority to "investigate*, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit….,*" a variety of interests and transactions.  *Zevallos v. Obama*, 10 F. Supp. 3d 111, 126 (D.D.C. 2014); 50 U.S.C. § 1702(a)(1)(B).  The assets here were not merely regulated, but were seized, frozen and blocked under IEEPA authority and OFAC Blocking

Regulations. *See infra* at §§ II, III; JA270, JA367 & JA269.  Additionally, as this Court has stated, TRIA was enacted to enlarge—not limit—victims' abilities to collect their judgments on terrorist assets:

> Even before the Terrorism Risk Insurance Act was passed, 28 U.S.C. § 1610(f)(1) purportedly allowed creditors holding judgments under § 1605(a)(7) …to attach blocked property. The President waived § 1610(f)(1) in almost all cases after finding that attachment of blocked property would "impede the ability of the President to conduct foreign policy" and "impede the effectiveness of ... prohibitions and regulations upon financial transactions…" Congress responded to this perceived "flaunting [flouting of?] the law," …by passing § 201, which "builds upon and extends the principles in section 1610(f)(1) ... and eliminates the effects of any Presidential waiver issued prior to the date of enactment." The floor debate clearly demonstrates that at least some members of Congress wanted to use Iran's assets to pay its victims, whether or not the executive agreed.

*Heiser v. Islamic Republic of Iran*, 735 F.3d 934, 939 (D.C. Cir. 2013) (internal citations omitted).

Moreover, in addition to the language and purpose of TRIA itself, decades of case law actually involving TRIA and the language of the OFAC regulations and its website guidance, demonstrate that in the terrorist statutory context, "blocking" and "freezing"  are synonymous.  For example, the OFAC website answers a question about the definition of blocking:

[Q] **9. What do you mean by "blocking?"**

[A]     Another word for it is "freezing…." Title to the blocked property remains with the target ….Blocking immediately imposes an across-the-board prohibition against transfers or dealings of any kind with regard to the property.

Released on September 10, 2002

*See* Basic Information on OFAC and Sanctions,

https://ofac.treasury.gov/faqs/topic/1501 (last accessed March 20, 2024).

Furthermore, OFAC allows transactions in blocked or frozen funds without unfreezing or unblocking all of them.  For example, OFAC responds to another question about blocked funds:

> If a transaction was previously blocked pursuant to the CACR … and the CACR was later amended to allow similar transactions, the earlier transaction is not unblocked unless the CACR amendments include a general license that unblocks previously blocked funds.….
>
> Date Released November 8, 2018

*See* OFAC Frequently Asked Question #752, https://ofac.treasury.gov/faqs/752 (last accessed March 20, 2024).  Additionally, the OFAC website defines blocking and freezing as the same. "E.O. 13599 requires U.S. persons to block (i.e., freeze) all … interests in property of the Government of Iran …."  *See* OFAC Iran Sanctions, Topic 1551, https://ofac.treasury.gov/faqs/topic/1551 (last accessed

March 20, 2024).  The Treasury Department has also defined freezing and

blocking as synonymous:

> There are a number of key phrases which consistently reappear in Treasury sanctions:
> A——*Blocking*
> *Also called "freezing,"* this is a form of controlling assets under U.S. jurisdiction. While title to blocked property remains with the designated country or national, the exercise of the powers and privileges normally associated with ownership is prohibited without authorization from OFAC….

United States Department of Treasury, *Foreign Assets Control Regulations for*

*the Financial Community*, p. 3 (emphasis added),

https://ofac.treasury.gov/media/16151/download?inline (last accessed March 20,

2024).

Courts in this district and others also have used freeze and block

interchangeably in connection with Executive Orders  and OFAC regulations

blocking foreign assets.  *Consarc Corp. v. United States Treasury Department*, 71

F.3d 909, 911 (D.C. Cir. 1995) ("According to the ISR, OFAC intends to have all

property in which Iraq has an interest placed in 'blocked,' or frozen, accounts.");

*United States v. $1,071,251.44 of Funds*, 324 F. Supp. 3d 38, 40, 42 (D.D.C.

2018) ("Eventually, these funds [of designated state sponsor of terrorism, North

Korea] were *frozen* in accounts …maintained with six U.S. financial institutions….

Plaintiff United States of America … brought this civil forfeiture action *in rem* against funds …, which are currently held in *blocked* funds accounts at six U.S. financial institutions." (emphasis added)); *American Airways Charters, Inc. v. Regan*, 746 F.2d 865, 867 (D.C. Cir. 1984) ("This designation, under … 31 C.F.R. pt. 515 (1983), effectively froze or blocked all of AAC's assets.").  New York Courts have also defined blocking and freezing as interchangeable. *See Hausler v. JPMorgan Chase Bank, N.A.*, 845 F. Supp. 2d 553, 560 (S.D.N.Y. 2012) ("There is no indication that BBVA has ever sought an OFAC license to *unblock* the *frozen* funds in which it now asserts an interest."); *In re 650 Fifth Ave. & Related Properties*, 881 F. Supp. 2d 533, 547 (S.D.N.Y. 2012) ("OFAC…has determined that 'E.O. 13599 requires U.S. persons to block all property…of Iran…' OFAC FAQs…. For purposes of the Executive Order, 'blocking' constitutes 'freezing,' and the words are used interchangeably.  *See* OFAC Regulations for the Financial Community, Dep't of the Treasury § V(A) (Jan. 24, 2012); *Fact Sheet: Implementation of National Defense Authorization Act Sanctions on Iran*, U.S. Dep't of Treasury, available at http://www.treasury.gov/press-center/press-releases/Pages/tg1409.aspx (last visited July 25, 2012) ('Among other things, the E.O. [13599] freezes all property of  Iran.'").

There cannot be any intellectually honest position that the assets in this case are not blocked under OFAC regulations and IEEPA and also frozen under the

same. Therefore the Blocked Assets are "blocked" and frozen under TRIA. TRIA § 201(d)(2).

    B. <u>The IEEPA and OFAC Blocked Assets Are not Unblocked or Unfrozen by the Issuance of the Government's OFAC Limited License, The Filing of a Forfeiture Case or the Arrest Warrant</u>

      1. The OFAC License Is Conditional on Its Face as It Must Be

After pushing the idea that the Iranian Blocked Assets are not really blocked under TRIA, because they were never frozen in the first place, DOJ argues that the assets were un-frozen: "The United States obtained from OFAC a license …." OFAC License, JA290–91; OFAC License Renewal, JA401–02. Because the Funds can be used [ultimately] for a legal purpose, the District Court correctly concluded that the Funds are *no longer* 'frozen' under IEEPA. JA412–16." Government Brief at 35 (emphasis added). Following the DOJ lead, the District Court held: "OFAC granted that [DOJ] request and issued a license (*also under the authority of IEEPA*) *unblocking* the funds to allow the United States and Wells Fargo "to engage in all transactions necessary and ordinarily incident to effect the forfeiture of" those funds." JA414 (emphasis added). However, the plain meaning of the "[*a*]*ll transactions necessary and ordinarily incident to effect the forfeiture of* [blocked funds]" language in the license authorizes but also mandates, completion of a successful civil forfeiture action before the funds become unblocked.

> Congress has, by statute, declared several types of property subject to civil forfeiture, including property involved in money laundering transactions … and 'property that "constitutes or is derived from proceeds traceable to" violations of... IEEPA …. In civil forfeiture proceedings, the plaintiff (here, the Government) 'bears the burden of proving, by a preponderance of the evidence [at trial], that the property … is subject to forfeiture.'

*United States v. $148,500 of Blocked Funds in the Name of Trans Multi Mechanics, Co., Ltd.*, No. CV 16-1029 (RJL), 2019 WL 1440882, at *4 (D.D.C. Mar. 29, 2019) (internal citations omitted).  There is no authority that OFAC on its own can transfer ownership to DOJ entitling it to possession and ownership of the blocked funds by means of a license.[3] DOJ still must prove its case in Court.  *Id*.; Government Brief at 42 (" [W]ithout a final order of forfeiture the United States has no title to the Funds…."); *United States v. $429,900.00 of Blocked Funds Associated With Ryer Int'l Trading, Ltd.*, No. CV 20-2546 (RC), 2021 WL 5050070, at *7 (D.D.C. Nov. 1, 2021) ("The Government must … meet its burden of proof *at trial* to show that the Defendant Funds constitute … proceeds traceable to an IEEPA violation to be subject to forfeiture under 18 U.S.C. § 981(a)(1)(C)."

---

[3] There are provisions in the OFAC regulations for owners of blocked funds to petition OFAC to unblock funds based on mistaken blocking orders.  31 C.F.R. § 501.801.  There is no provision in the Iranian terrorism regulations allowing OFAC to  transfer ownership from the blocked property owner to the Government without a judicial finding in support of such transfer by some other statute.  For victims, the statute allowing transfer of ownership is TRIA.  *See* TRIA § 201.

(emphasis added)).[4]

The limiting verb "effect" in the license means "to achieve something and cause it to happen."  Effect (emphasis added), https://dictionary.cambridge.org/us/dictionary/english/effect (last accessed March 20, 2024). The limited, conditional OFAC license given to DOJ here to allow it to attempt to secure or effect forfeiture and potentially cause the Court to order the funds to be released by Wells Fargo to it, is not itself in conflict with TRIA, because it did not unfreeze or unblock the funds, which are still with Wells Fargo in the name of agents of Iran.  JA367; JA291.  However, the interpretation given to the license by the District Court and DOJ, that the OFAC non final license issued under IEEPA regulations unblocked the funds, where IEEPA itself blocked the funds, would result in a conflict with TRIA's language. TRIA § 201(d).  Neither DOJ nor the District Court explain how a conditional license, which allows DOJ to undergo judicial process to try to obtain a judgment in civil forfeiture against the blocked funds, somehow "unblocks" them under IEEPA and the OFAC regulations, removing them from TRIA's scope.  The Court cites "31 C.F.R. pt. 501 as authority for unblocking funds."  JA414.  But 31 C.F.R. pt. 501, describing OFAC's power to issue licenses for different purposes, does not state that any

---

[4] In contrast, the Levins, under TRIA, only need to show blocked assets are property of Iran, as this Court has already determined. *Estate of Levin*, 45 F.4th at 423.

license automatically unblocks the funds.  The licensing section of 501 states that general and specific licenses allowing prohibited transactions may issue under "conditions."  "General [and specific] licenses may be issued authorizing, under appropriate terms and conditions [consistent with the terrorist statutes], certain types of transactions that are subject to the prohibitions contained in this chapter." 31 C.F.R. § 501.801.  The license here is conditional on obtaining an appropriate final court order and it does not state that it unblocks anything or allows DOJ to take possession or ownership.  By its terms, Wells Fargo may not release the funds to DOJ without a final court order.  JA291.  Even DOJ admits that neither general nor specific OFAC licenses unblock all funds for all purposes.  Government Brief at 30 ("neither general licenses nor specific licenses unblock assets for all purposes….").

Furthermore, there is a section of 501 that deals with "unblocked" funds. While there is a process for unblocking where OFAC made a mistake, there is no provision that "funds allowed to be used for any legal purpose or funds subject to any OFAC license," are unblocked, as the District Court and DOJ argue.  JA414; 31 C.F.R. § 501.801.  There is a section requiring any financial institution which "unblocks" funds to file a report including giving the legal authority for any such unblocking.  31 C.F.R. § 501.603.  Of course, here, Wells Fargo did not treat the Iranian Blocked Assets as "unblocked" and OFAC has not given DOJ any

unconditional permission to have Wells Fargo pay the funds to it because they are

"unblocked."  Wells Fargo Brief at 9-10.  Wells Fargo has not produced any report

it made to OFAC because the funds were "unblocked" by OFAC license.[5]  *United*

*States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 629, 633

(7th Cir. 2015) (concurring and dissenting opinion of  J. Manion) ("The license, by

its terms, did not unblock the funds for the purposes of TRIA …. If an OFAC

forfeiture license with an arrest warrant or restraining order unblocks blocked

assets, plaintiffs who are 'allowed to enter the courthouse' through TRIA's

'notwithstanding' clause will never obtain relief since every forfeiture action

against blocked funds requires an OFAC license and an arrest warrant or

restraining order.").

---

[5] Wells Fargo filed a 20 page brief which adds nothing to the issues here.  The
Bank complains about incurring costs, but pays counsel for a brief which spends
pages repeating in detail the litigation history well known to this Court, and asking
the Court to protect it.  *See generally* Wells Fargo Brief.  If a bank acts as a true
neutral stakeholder, the costs it will incur due to OFAC regulations—which are a
part of its international business obligations—are minimal.  Even in an interpleader
case, fees and costs are not available where litigation efforts should be minimal
and a part of doing business.  *Sparta Florida Music Grp. v. Chrysalis Records*, 566
F. Supp. 321, 322 (S.D.N.Y. 1983) ("[C]osts and attorneys fees incurred in
contesting claims which arise in the ordinary course of business may not be
transferred by invoking interpleader.").  Wells Fargo's interests will be protected
by the Court order which properly awards the blocked assets to the Levins, and
releases it from liability.

2. The Cases Cited by DOJ Are Non-Binding, Non-Persuasive and Distinguishable

The Government and the District Court rely on the non-binding majority opinions in *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 621 (7th Cir. 2015); *United States v. Holy Land Found. Relief & Dev.*, 722 F.3d 677 (5th Cir. 2013); and the District Court in *Bank of New York v. Rubin*, 05-cv-4926, 2006 WL 633315 (S.D.N.Y. Mar. 15, 2006), *aff'd in part, vacated in part*, 484 F.3d 149 (2d Cir. 2007). Government Brief at 35-37; JA413. The Levins fully discussed these cases in their opening brief. Levin Opening Brief at 37-45. All of them are distinguishable, and to the extent any of them support the proposition that an OFAC license or a civil forfeiture complaint can unblock assets in order to remove them from the scope of TRIA they are wrongly decided. *R.J. O'Brien & Assocs.*, 783 F.3d at 629, 633.

In addition, unlike *Holy Land* and *O'Brien*, the Iranian Blocked Assets are not property in the United States' possession, which possession those Courts found dispositive. *R.J. O'Brien & Assocs.*, 783 F.3d at 626 ("Without any waiver of sovereign immunity, Appellees cannot attach the defendant funds, now seized and *held* by the United States, to satisfy their judgment against al Qaeda.… ['S]overeign immunity bars creditors from attaching or garnishing funds in the Treasury[.]'" (emphasis added; internal citation omitted); *see also Weinstein v. Islamic Republic of Iran,* 274 F. Supp. 2d 53, 58 (D.D.C. 2003) ("[I]f the property

27

sought to be attached by plaintiffs is property that (1) has been seized by the United States from a terrorist party and (2) is presently *held* by the United States, it cannot be attached...." (emphasis added)).

Further, in *Bank of NY v. Rubin* and *Weinstein*, the executive orders at issue were  expressly repealed by President Carter.

> In keeping with …the Algiers Accords, … President Carter explicitly revoked [the] Executive Orders, and OFAC promulgated a general license that "authorized" "[t]ransactions involving property in which Iran or an Iranian entity has an interest" …." 31 C.F.R. § 535.579(a). … Accordingly, transactions authorized by the general license would not be blocked by Section 535.201.

*Bank of New York v. Rubin*, 05-cv-4926, 2006 WL 633315 *3 (S.D.N.Y. Mar. 15, 2006), *aff'd in part, vacated in part*, 484 F.3d 149 (2d Cir. 2007); *see also Weinstein*, 274 F.Supp.2d at 58.  The Executive Orders blocking Iranian assets here, including 13224, are not repealed.  *See, e.g.*, JA269.

With no citation to any relevant authority, the Government also argues: "if an asset is both frozen under IEEPA and blocked under another statute, a license under that other act will place the asset beyond the reach of TRIA even if no license was issued under IEEPA. TRIA § 201(d)(2)."  Government Brief at 26.  TRIA simply does not say that.  TRIA states that a blocked asset:

> does not include property that--
>  (i) is subject to a license issued by the United States Government for *final* payment, transfer, or disposition by

28

> or to a person subject to the jurisdiction of the United States in connection with a transaction *for which the issuance of such license has been specifically required by statute other than [IEEPA]*.

TRIA § 201(d)(2) (emphasis added).  The license, issued here under IEEPA, does not fit TRIA's definition of excluded property, and the Iranian Blocked Assets were not unblocked by the Government's license.  *Id*.; *see also* Levin Opening Brief at 45.

Furthermore, TRIA's "notwithstanding clause" prevents any license, statute or warrant not referenced in TRIA from unblocking assets. TRIA states: "Notwithstanding any other provision of law … the blocked assets of that terrorist party … shall be subject to execution … to satisfy such judgment…."  TRIA § 201(a).  DOJ claims that an OFAC license, the civil forfeiture statute or a warrant can eviscerate TRIA's comprehensive coverage of blocked assets, making them unavailable under TRIA.  They cannot.  *See* Levin Opening Brief at 45-58; *see also Doe v. Fed. Election Comm'n*, 920 F.3d 866, 870 (D.C. Cir. 2019) ("The Supreme Court answered: 'authorized by law' includes 'properly promulgated, substantive agency regulations.'"); *see infra*.

## II.    THE FORFEITURE IN REM STATUTE AND THE ASSOCIATED WARRANT DO NOT ELIMINATE TRIA'S JURISDICTION OVER IEEPA BLOCKED ASSETS

The District Court and Government assert that the prior exclusive jurisdiction doctrine closes the courthouse doors to TRIA victims.  JA420.  This is based on the proposition that the maxim is not a "provision of law," which TRIA's "notwithstanding" language reaches.  JA417-418.  The Levins have briefed the proper reach of "provision of law" in the terrorist context, and the District Court erred.  *See* Levin Opening Brief at 45-58.

However, in addition, it is significant that the "exclusive jurisdiction" claimed for the DOJ *in rem* suit here depends on the filing of the DOJ civil forfeiture case and issue of a warrant, based on a statute.  "[T]he United States filed a forfeiture action … [under] 18 U.S.C. § 981(a)(1)(A), (C), (G)(i)."  JA408.  As this Court has stated:

> The practice of civil forfeiture allows law enforcement to seize property and then seek permanent forfeiture in a civil proceeding *in rem* …. Though rooted in an English Law tradition that operated 'under the fiction that the thing itself, rather than the owner, was guilty of the crime,' contemporary civil forfeiture in the federal system is a creature of *statute*….

*United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in U.S. Currency*, 859 F.3d 1085, 1087 (D.C. Cir. 2017) (emphasis added; internal citation omitted); *United States v. Parcel of Rumson, N.J., Land*, 507 U.S. 111, 127

(1993) ("if a forfeiture is authorized by statute, 'the rules of the common law may be dispensed with,' 3 Cranch, at 351.").

Whatever arguments may be made about maxims and common law not being provisions of law, this Court has recognized that statutes are clearly provisions of law covered by TRIA. *Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 432 (D.C. Cir. 2023) *cert. denied sub nom. Greenbaum v. United States*, 144 S. Ct. 568 (2024) ("The phrase clearly requires courts to disregard other statutory provisions that conflict with the scope of the TRIA. … *See* Merriam Webster's Dictionary of Law 394 (1996) (defining 'provision' as "a stipulation (as a clause in a statute or contract)…"); JA418.  The District Court failed to appreciate that TRIA's notwithstanding language clearly operates to shield victims from Government efforts to block their private collection actions under claims of exclusivity due to forfeiture *in rem* statutes.  *Id*.; *R. J. O'Brien & Assocs.*, 783 F.3d at 621 ("Appellees could proceed with their [private collection] claims notwithstanding the conflicting provisions of civil forfeiture [due to TRIA's notwithstanding clause].").  The Government also takes the position that it already owns the blocked assets because it alleges acts which would form the basis for statutory civil forfeiture, and therefore, since the Government has title to the assets, they are unblocked.  Government Brief at 28 ("18 U.S.C. § 981(f) (title 'shall vest in the United States upon commission of the act giving rise to forfeiture under this

31

section'").  The Supreme Court has rejected this argument involving a similar

forfeiture statute, 21 U.S.C. § 881(a)(6).  *United States v. Parcel of Rumson, N.J.,*

*Land*, 507 U.S. 111, 124 (1993) ("We conclude, however, that neither the

amendment [vesting title on the commission of the wrongful act] nor the common

law rule makes the Government an owner of property *before forfeiture has been*

*decreed*." (emphasis added)).[6]  The Government does not have title to the Iranian

Blocked Assets.  *Id.*

## III.    THE BLOCKED ASSETS HERE WERE SEIZED AND FROZEN

The Government also states: "[T]he [Iranian Blocked] Funds were never

'seized' under IEEPA."  Government Brief at 18.  However, the Iranian Blocked

Assets here were both seized and frozen under IEEPA and subject to TRIA.  *See*

JA269-271.

The Government's argument that the Iranian Blocked Assets were not

"seized" under TRIA depends on the word "seized" being defined as

"confiscated."  This is wrong.  TRIA does not define the word "seized."  *See*

---

[6] The District Court wrongly posited that allowing the victims competing  actions
under TRIA would also create chaos in multiple courts.  JA419.  The Levins
address this in their opening brief.  *See* Levin Opening Brief at 57-59.  There is no
actual problem of competing forums.  The need, under TRIA, to obtain a proper
1610(c) writ in the jurisdiction where the assets are held—here, South Dakota—
does not create chaos and a proper turnover order may be issued by the District
Court under South Dakota law or the District Court in South Dakota.  *Id.*  The
federal forum should make no difference in a correct application of the law
governing priorities.  Levin Opening Brief at 61-62.

TRIA, Pub. L. No. 107-297, 116 Stat. 2322 (Nov. 26, 2002); *see also Weinstein v. Islamic Republic of Iran*, 299 F. Supp. 2d 63, 75 (E.D.N.Y. 2004) (in discussing TRIA's language, the Court observed that "the terms 'seize' or 'freeze' [are not defined].").  However, the Government argues without citing any relevant legal authority that the word "seized" should be interpreted to mean "confiscated."  The Government states: "While the verbs in IEEPA's operative provision … § 1702, and those in TRIA are not the same, TRIA's use of 'seized' appears to contemplate assets described in IEEPA Section 1702(a)(1)(C), which permits the President to 'confiscate' certain property. … § 1702(a)(1)(C)."  Government Brief at 18.  The Government goes on to state: "TRIA's reference to an asset 'seized' under IEEPA appears to refer to IEEPA's confiscation provisions as no other provision of the referenced IEEPA sections allows the United States to take *possession* of an asset… ."  Government Brief at 18 (emphasis added).

However, there is no indication in TRIA that its definition of "seized" is limited to "confiscate" or taking physical possession, or that the verbs in IEEPA §§ 1701-1702, to which TRIA refers generally, do not apply to the definition of "seized."  Furthermore, contrary to the Government's definition, courts in this Circuit and the Supreme Court have held that Government seizure, under the Constitution, does not mean only possession, but includes regulations which inhibit an owner's use of its property.  *See Proctor v. District of Columbia*, 531 F. Supp.

3d 49, 66 (D.D.C. 2021) ("The Fourth Amendment secures the 'right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' A seizure 'occurs when there is some meaningful interference with an individual's possessory interests in that property.'" (internal citations omitted)); *see also Gallo v. District of Columbia*, No. 1:21-cv-03298 (TNM), 2023 WL 7552703, at *3 (D.D.C. Nov. 14, 2023) ("[T]he Government may also effect a taking [seizure] without *physically* seizing a property.  When the Government 'imposes regulations that restrict an owner's ability to use his own property,' it may be liable for imposing a so-called regulatory taking [or seizure]." ((quoting *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 148 (2021); emphasis added)).[7]

A New York District Court explained the difference between "confiscate" and "seize or freeze" under IEEPA: "To seize or freeze assets transfers *possessory* interest in the property.  But confiscation, pursuant to IEEPA § 203(a)(1)(C) [*i.e.,* 50 U.S.C. § 1702(a)(1)(C)], transfers *ownership* of terrorist property by vesting right, title, and interest as the President deems appropriate."  *Weinstein*, 299 F. Supp. 2d at 75 (quoting *Smith ex rel. Est. of Smith*

---

[7] The Seventh Circuit in *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 625 (7th Cir. 2015), cited by the Government, does not address this issue.

*v. Fed. Rsrv. Bank of New York*, 346 F.3d 264, 271-72 (2d Cir. 2003); emphasis in original).

The Court in *Hausler* emphasized that Congress expressly differentiates between seized or frozen "blocked assets" under TRIA vs. "confiscated" assets:

> [T]he Court notes that where Congress wished to except property from execution under TRIA, it did so: TRIA § 201 defines "blocked assets" to not include certain property confiscated by the United States. *See* TRIA § 201(d)(2)(B); 148 Cong. Rec. S11528; *Smith,* 346 F.3d at 271–72 (concluding that the term "blocked assets" reaches broadly to include any property seized or frozen by the United [States], but does not include confiscated property because confiscation pursuant to the IEEPA transfers ownership, as [opposed] to possession, of terrorist property).

*Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 536 (S.D.N.Y. 2010).

And the Second Circuit has further discussed the definition of "confiscate:"

> As Senator Harkin … noted, the term "blocked assets" reaches broadly to include any property seized or frozen by the United States. But it does not reach so broadly as to encompass *confiscated* property. To *seize* or *freeze* assets transfers possessory *interest* in the property. But *confiscation*, pursuant to IEEPA § 203(a)(1) (C), transfers *ownership* of terrorist property …. Indeed, Senator Harkin added an important caveat to his remarks: "[A]ny assets as to which the United States claims *ownership* are not included in the definition of 'blocked assets' [in TRIA § 201] and are not subject to execution or attachment under this provision."

*Smith ex rel. Estate of Smith v. Federal Reserve Bank of New York*, 346 F.3d 264,

273 (2nd Cir. 2003) (emphasis added; internal citations omitted).

This Court has also held that in the limited circumstance when the United

States takes physical possession and ownership of foreign assets, putting them into

a *United States* account, sovereign immunity prevents a suit by victims against the

United States.

> [A]ppellants['] … argument is premised upon a
> misunderstanding of federal sovereign immunity. They
> assume that comprehensive blocking regulations under
> U.S. sanctions laws are enough for the United States to
> raise a meritorious defense of federal sovereign immunity.
> *Possession, however, not regulation, is, … "the sine qua
> non of federal sovereign immunity." Kalodner*, 310 F.3d
> at 770. … [W]e hold … federal sovereign immunity
> prevents the attachment and garnishment of oil proceeds
> in a bank account *of the United States*….

*Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 435 (D.C. Cir. 2023), *cert.*

*denied sub nom. Greenbaum v. United States*, 144 S. Ct. 568 (2024) (emphasis

added).

In *Greenbaum*, "the writs impermissibly direct[ed] the U.S. Marshal to seize

property held in a government escrow account. … [and] name[d] the U.S.

Attorney's Office as garnishee." *Greenbaum*, 67 F.4th at 431. The Levins' writ

names the garnishee as Wells Fargo and the blocked accounts are not in the name

of the United States, but rather the agents and instrumentalities of Iran. JA121-

127; JA367.  And as the Government admits, the Iranian Blocked Assets were not "confiscated:"

> IEEPA's "confiscation" provisions, however, only apply "when the United States is engaged in armed hostilities or has been attacked by a foreign country or foreign nationals[.]…." These circumstances are not present here, and OFAC did not invoke any powers to "confiscate" property when it initially blocked the Funds under IEEPA. *See* Blocking Memos., JA269–71.

Government Brief at 19.

The Iranian Blocked Assets are held in a blocked Wells Fargo Bank account, in the name of the agents of Iran, and as this Court has found, those blocked funds are property of Iran.  *See Estate of Levin*, 45 F.4th at 423–24 ( "the blocked funds were, under § 201(a) of the TRIA, 'the blocked assets of [a] terrorist party [Iran] (including the blocked assets of any agency or instrumentality of that terrorist party [Taif]).'").  The Iranian Blocked Assets are not in the United States' possession or ownership.  JA367-368.  Under TRIA and all case law relevant to the issue of seizure, the Iranian Blocked Assets are seized within the meaning of TRIA and are subject to execution by the Levins pursuant to the 1610(c) writ issued by the District Court.  JA121-127;

*Smith ex rel. Est. of Smith*, 346 F.3d at 269 ("Section 201 [of TRIA] … defines 'blocked assets' as "any asset seized or frozen by the United States under ... section [ ] 202 ... of the [IEEPA].'").

## IV.    CONCLUSION

For all the reasons set forth herein and in the Levins' Opening Brief, the

District Court should be reversed again, and the Levins should be allowed to

execute on the Iranian Blocked Assets.

Dated: April 3, 2024                    Respectfully submitted,

                                         */s/ Suzelle M. Smith*
                                        Suzelle M. Smith
                                        Don Howarth
                                        HOWARTH & SMITH
                                        30745 Pacific Coast Highway,
                                        Suite 2046
                                        Malibu, California 90265
                                        *Counsel for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the word limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,487 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 2311 in 14-point Times New Roman.

Dated: April 3, 2024

*/s/ Suzelle M. Smith*
Suzelle M. Smith
HOWARTH & SMITH
30745 Pacific Coast Highway,
Suite 2046
Malibu, California 90265
*Counsel for Plaintiffs-Appellants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 3, 2024, the foregoing was served on all counsel of record via the CM/ECF system.

_/s/ Suzelle M. Smith_
Suzelle M. Smith